all of the man's savings.   His claim of an agreement to pay a fee of $500 is unsupported by the evidence, and upon a basis of a quantum meruit is grossly excessive.   His whole conduct as briefly outlined above shows a purpose and design to appropriate the bulk of his client's savings, to avoid a settlement, and to hurry McKenna out of the country as rapidly as possible.   There is no place in an honorable and learned profession for one who commits, as the referee has found, such gross professional misconduct.

The respondent is therefore disbarred.   All concur.

---

HART v. EQUITABLE LIFE ASSUR. SOCIETY OF THE UNITED STATES et al.

(Supreme Court, Appellate Division, First Department.   May 12, 1916.)

1. TRUSTS ☞30½(1)—CREATION—CONTRACT—CONSTRUCTION.
    Tripartite agreement among insurance company, its agent, and his creditors, by which the company would retain past and future renewal commissions due the agent, to pay interest and principal due creditors, the agent to remain in its employ and the creditors to refrain from suit for three years, created a trust for the benefit of general creditors and made the company a trustee when the fund came into existence.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 41;  Dec. Dig. ☞30½(1).]

2. TRUSTS ☞291—RIGHTS OF BENEFICIARY—ACCOUNT.
    Any beneficiary of an express contractual trust can call the trustee to account.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 409, 410;  Dec. Dig. ☞291.]

3. TRUSTS ☞61(3)—TERMINATION—CONTRACT—CONSTRUCTION.
    Tripartite agreement among insurance company, its agent, and his creditors, by which the company would retain past and future renewal commissions due the agent, to pay interest and principal due creditors, the agent to remain in its employ and the creditors to refrain from suit for three years, was not terminated at the end of the three-year period, which applies only to the right of the creditors to sue, but continued by express provision until all debts were paid.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 85;  Dec. Dig. ☞61(3).]

4. CONTRACTS ☞186(1)—CONSTRUCTION—RIGHTS OF THIRD PERSON.
    Where such agent left the employ of the company for a time, and they, on again employing him, exacted as a condition that creditors agree that the company have a first lien on all future commissions and that the agent assign his rights to the creditors, though the company was not a party to the agreements made, it could take advantage of them, since they were intended to and did influence its action.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 790, 791;  Dec. Dig. ☞186(1).]

5. TRUSTS ☞305—ACCOUNTING—EVIDENCE—ADMISSIBILITY.
    Such agreements are admissible in the creditors' suit against the trustee for an accounting.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 421–426;  Dec. Dig. ☞305.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRUSTS ⊜⟿296 — RIGHTS OF BENEFICIARY — ACCOUNTING — SUBSEQUENT AGREEMENTS.

Such agreements did not relinquish the creditors' right to an accounting under the tripartite agreement.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 415; Dec. Dig. ⊜⟿296.]

7. TRUSTS ⊜⟿162—TERMINATION—SUBSEQUENT AGREEMENTS.

Such agreements released the trustee from further acting as such under the tripartite trust agreement.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 212, 213; Dec. Dig. ⊜⟿162.]

8. TRUSTS ⊜⟿61(3)—TERMINATION—SUBSEQUENT AGREEMENTS.

Subsequent payments by the company to the agent, who assigned them to the creditor, were not a recognition of the continuance of the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 85; Dec. Dig. ⊜⟿61(3).]

9. TRUSTS ⊜⟿61(3)—TERMINATION—SUBSEQUENT AGREEMENTS.

Such agreements have no other effect than to terminate the trust from their date.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 85; Dec. Dig. ⊜⟿61(3).]

Appeal from Special Term, New York County.

Suit by Reginald L. Hart against the Equitable Life Assurance Society of the United States and others. From an interlocutory judgment for plaintiff, defendant named appeals. Modified and affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, PAGE, and DAVIS, JJ.

Allan McCulloh, of New York City (William Carroll Diamond, of New York City, on the brief), for appellant.

Alfred D. Lind, of New York City (Max Frank, of New York City, on the brief), for respondent.

LAUGHLIN, J. The principal contentions of the appellant which merit consideration are that no trust was created by the agreement; that, if a trust was created thereby, it has been released and discharged; and that in any event the accounting should be limited to the period to August 12, 1898, when it is claimed that the trust, if one was created, terminated so far as the plaintiff is concerned. No other party to the agreement is before the court asserting any claim thereunder. It does not appear that any party defendant other than the appellant was served or has appeared; but as no question in that regard is raised, and it appears that the claims of some, if not all, of the general creditors have been satisfied, we pass the point without expressing an opinion as to whether the other parties should have been brought in.

The agreement under which the accounting was ordered is tripartite, and was made between the plaintiff and 10 other general creditors of one Haynes, who was a general agent of the appellant, and Haynes and appellant. It was admitted that Haynes was then a general agent for the appellant in soliciting policies, under a contract by which he received a commission on the original premiums and on renewal premiums for 19 years thereafter; that he was indebted to the appellant in

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an amount upwards of $365,000 for moneys advanced to him in procuring business for it, and that it claimed a paramount lien therefor on his interest in the renewal premiums; that like liens, subordinate, however, to that of the appellant, were claimed by four individuals not parties to the tripartite agreement, to each of whom he owed a large amount; that he owed other unsecured general creditors, including the plaintiff and other 10 who executed the tripartite agreement, about $150,000, the plaintiff's claim being $40,608.32, and that his creditors were pressing their claims, and it was to the interest of all parties to the tripartite agreement that litigation should not be instituted against him to enforce payment. It appears that Haynes had written a very large amount of insurance for the appellant, and a great number of renewal premiums were being received by it, upon which he was entitled to commissions, but the amount is not stated.

In preambles to the tripartite agreement these facts are briefly recited, and it is also recited that Haynes promised to remain with the appellant during the three years from July 1, 1893, and to devote his energies to the conduct of his agency with it in an endeavor to write new insurance, and that the appellant was willing "to take control of and direct the financial methods of said agency" under agreements existing between it and Haynes "until said debts are fully liquidated." The preambles are followed by an agreement on the part of the general creditors that all claims by the appellant for loans or advances against the renewal interests of Haynes, with 5 per cent. interest thereon, should be liens superior to their rights; that pro rata dividends or payments might be declared or made by appellant on account of their claims from time to time, with interest at 5 per cent., which was to be first paid, and that they would take no action to enforce their claims during the period of three years from the 1st of July, 1893; and it was therein expressly stated that it was understood that the agreement on their part was predicated upon an expectation that during the three years there would be amounts sufficient available for the payment of interest on their claims beginning on March 1, 1894. Those provisions are followed by an agreement on the part of Haynes by which he gave the appellant full control of all his *renewal interest* in the business of the appellant, past or future, "pending the payment in full of all his present creditors (other than those having prior liens thereon for loans and advances), for the purpose of creating therefrom a fund to pay said creditors in full in the shortest possible time. it being understood that when and as soon as said creditors are paid in full, with interest, the trust hereby created shall cease and determine," upon condition, however, that the appellant should provide for his support pending the payment of his creditors in full, "and for the expense of conducting, promoting, and aiding said agency, if necessary, beyond the terms of his contract with said society, without any interference or control of said creditors, but only if in the opinion of said society it is necessary for the good of the agency and the greater security of said creditors, such provision to be a first charge against renewal and other commissions," and he agreed with the creditors to use his best endeavors to obtain new business

and to increase the fund. Then came an agreement on the part of the appellant "to use its best discretion in and about the premises," and a recital that by the agreement the appellant "simply indicates its intention to appropriate, for the carrying out of this agreement between said Haynes and his said creditors, the funds applicable thereto, as the same shall accrue, using its best endeavors with this end in view."

The general creditors, in accordance with their agreement, refrained from pressing their claims. In February, 1895, the plaintiff and Haynes became copartners in the life insurance business, and as such represented the appellant until April, 1895, when they resigned and became agents for the Union Central Life Insurance Company; but on August 12, 1898, Haynes again entered the employ of the appellant and so continued for a period of years thereafter. It is admitted by the pleadings that on the 3d day of July, 1893, which was after the tripartite agreement became effective, the appellant paid to one of the general creditors who signed it the sum of $16,119, and on the 16th day of November, 1895, the further sum of $8,387, which paid the claim in full; that there has been no pro rata payment to the plaintiff, and these payments were made without his knowledge or consent.

[1, 2] We are of opinion that the learned trial court was right in holding that the tripartite agreement constituted the appellant a trustee for the plaintiff and other general creditors, and for Haynes, of the moneys due and to grow due to him on account of *renewal premiums*, and that it became its duty to administer the fund as it accrued in accordance with the provisions of the agreement. The consideration flowing from the general creditors was their agreement not to press their claims; and the consideration flowing to Haynes and to the appellant was the opportunity thus afforded and the advantage thus obtained in enabling him to pursue his and its business without molestation on account of these claims. Moreover, the parties considered that they had created a trust, for it is so expressly recited in the provision relating to the termination thereof when the debts are paid in full. But for the agreement, Haynes would have been entitled to receive the commissions, and they might have been reached by the plaintiff and the other creditors. By the agreement Haynes, in effect, assigned his commissions to the appellant to administer as provided in the agreement. Under the agreement the appellant came into possession of a fund, as is shown by its disbursement of about $26,000 in the payment in full of the claim of one of the general creditors, and it is fairly to be inferred that there were large additions to the fund from time to time. The objects of the trust were specified, and there were specific directions with respect to the administration thereof for the benefit of designated beneficiaries. The agreement, therefore, contained all the essential elements of a trust. See Brown v. Spohr, 180 N. Y. 201, 73 N. E. 14; Neresheimer v. Smyth, 167 N. Y. 202, 60 N. E. 449; Mersereau v. Bennett, 124 App. Div. 413, 108 N. Y. Supp. 868; Frethey v. Durant, 24 App. Div. 58, 48 N. Y. Supp. 839; Matter of Carpenter, 131 N. Y. 86, 29 N. E. 1005; Hoffman House v. Foote, 172 N. Y. 348, 65 N. E. 169; Schantz v. Oakman, 163 N. Y.

148, 57 N. E. 288; Reading v. Haggin, 58 Hun, 450, 12 N. Y. Supp. 368. It follows that any beneficiary could call the trustee to account. The evidence shows that there has been no accounting.

[3] It is further contended in behalf of the appellant that in any event the trust terminated at the expiration of the three-year period specified in the agreement. I am of opinion that the agreement should not be so construed. The three-year limitation was with respect to the rights of the creditors to prosecute their claims; but in the general provisions of the agreement it was declared that it should continue until the debts were paid. The appellant also claims that the agreement was terminated and abrogated by Haynes' failure, with the knowledge and acquiescence of plaintiff, to remain in the employ of the appellant for three years; but the general provisions of the agreement, I think, were not conditioned upon Haynes' so remaining in the employ of the appellant. That would doubtless affect the amount of the fund, for if he did not secure new business his renewal interest would be confined to the business theretofore procured by him; but it was realized, that there would continue to be a fund from the renewal premiums on existing business in any event. Moreover, it does not appear that the appellant interposed any objection to Haynes' withdrawing from its employ at that time, and so far as appears it asserted no right to terminate the agreement on account thereof.

[4-7] The appellant, however, pleaded and proved, or offered to prove, by documentary evidence which is in the record, that in August, 1898, Haynes applied to it for reappointment as agent, and that it agreed to reappoint him upon condition that he obtain an agreement from the plaintiff to the effect that any advances it might make to Haynes in the future, and that all indebtedness from him to it "theretofore or thereafter arising in any manner, should be and constitute a lien upon any and all commissions or credits accruing "to him at any time or in any manner upon any of his contracts, and should have "priority over any claims that the plaintiff should have against said defendant Haynes"; that thereupon the plaintiff, to enable Haynes to obtain such reappointment, wrote a letter to Haynes, containing, among other things, the following:

"I further agree that the said society may make such advances to or charges against your account as it may from time to time deem advisable, it being always understood and agreed that any and all indebtedness by you to said society at any time heretofore arising, or that may in the future arise in any manner whatsoever from advances or charges made to or against your account by said society, shall be a first and prior lien upon any and all renewal commissions or other credits accruing to you in any manner whatsoever. This agreement on my part is made with the understanding that you will assign to me all your right, title, and interest in and to any and all renewal commissions already accruing to you or that may hereafter accrue to you under or by virtue of any and all contracts and agreements already entered into between yourself and the society, or renewal commissions acquired by you in any other manner whatsoever with said society, subject to the first claim of the said society as above,"

—and subject to the claims of the other four creditors who asserted liens. Haynes thereupon executed and delivered to the plaintiff, as collateral security for the indebtedness owing to him by Haynes, an

agreement on his part assigning to plaintiff his right, title, and interest in and to renewal commissions "that may accrue," and that agreement contains, among other things, the following:

"It is further a condition of this assignment that the same will not in any way affect the right of the said society to make such advances to me in the future as may to them seem expedient; it being always understood and agreed that any and all indebtedness due or to become due in any manner whatsoever by me to said society on account of charges made against my account, or advances made to me by said society, at any time, past or future, shall constitute a first lien against the interest herein assigned, until my full indebtedness to the said society, no matter how, or in whatsoever manner, the same may have accrued, or may accrue, shall have been liquidated, with interest."

Then follows a recital that the agreement is subject, also, to the liens of the four other creditors to whom reference has been made. These agreements were delivered to the appellant before it contracted with Haynes for his reappointment, and it is therefore fairly to be inferred that it was intended that the appellant should have knowledge of their contents, and should, as it did, rely upon them in so reappointing Haynes. The court excluded those agreements, and appellant excepted; but they were marked for identification and are in the record. I am of opinion that the agreements were erroneously excluded. Ordinarily such erroneous rulings would require a new trial, but since the agreements are not subject to change we do not deem it necessary to reverse and remit the case for the modification of the interlocutory judgment which we think they require, for that may be done here without prejudice to the rights of the plaintiff.

The learned counsel for the respondent contends, in effect, that the appellant is not entitled to take advantage of those agreements, because it is not a party to either of them; but, as already observed, they were intended to and did influence its action. Upon the trial counsel for the appellant asked leave to amend the answer by pleading, in effect, that those agreements abrogated the tripartite agreement and constitute a relinquishment of any rights which the plaintiff had thereunder. The amendment was not allowed, and no point is now made of the refusal to allow it. It is manifest that upon no theory could it be maintained that those agreements constitute a relinquishment of the right to an accounting which the plaintiff had under the tripartite agreement. I think, however, that the plaintiff thereby relieved and released the appellant from *further* acting as trustee under the tripartite agreement.

By the tripartite agreement plaintiff and two other general creditors of Haynes acquired in common an equitable interest in the commissions to become due from appellant to Haynes; but by the assignment from Haynes of August 12, 1898, he acquired solely for himself the legal title to the commissions, subject only to five specified liens, and wholly in disregard of the rights of the other 10 general creditors. Plaintiff does not claim the right to an accounting in this action by virtue of the agreement of the commissions to him by Haynes. He contends that what transpired when appellant reappointed Haynes in 1898 in no manner affected the tripartite agreement. The appellant, in

addition to claiming that the agreements of August 12, 1898, so erroneously excluded, released it from any accounting, further contends, in effect, that those agreements constitute a modification of plaintiff's rights with respect to any accounting to which he may be entitled, and that in any event, if the tripartite agreement created a trust, they terminated it.   Although there is no express reference in the agreements of August 12, 1898, to the tripartite agreement, it is quite clear, I think, that as between plaintiff, appellant, and Haynes they terminated the trust, for, as already observed, they are plainly inconsistent with the continuance of the trust, in that they purport to provide for the transfer and delivery of the commissions to plaintiff after satisfaction of the liens and in total disregard of the rights of the other 10 general creditors under the tripartite agreement and of the duties of the trustee thereunder.

[8] The only interest which plaintiff claimed in Haynes' commissions was by virtue of the tripartite agreement; and when appellant, as a condition of taking Haynes back, insisted that plaintiff subordinate his claim to commissions to grow due to Haynes in the future to any claim, past or future, which it might have against Haynes, it is manifest that this must have been intended as a relinquishment of some right which it was deemed plaintiff had under the tripartite agreement with respect to commissions to fall due to Haynes in future.  It does not appear that any payment was ever made to plaintiff by appellant under the tripartite agreement on account of *principal,* but it does appear that it paid the interest until Haynes left its employ in 1895. After that, and before Haynes re-entered its employ, appellant apparently recognized that the tripartite agreement continued in force as to some of the other general creditors, for it made payments to them from Haynes' renewal commissions.   After Haynes re-entered appellant's employ in 1898, it made advances to him on statements of the purposes for which he desired the money, and such statements embraced items for interest on his said indebtedness to plaintiff, and although it turned the money over to Haynes it supervised the disbursement thereof to see that it was applied to the purposes for which it was advanced.   That, it is claimed, was a recognition that the tripartite agreement continued in force as to plaintiff and as to others.  I am of opinion that such deduction from those facts is not warranted.  If appellant had deemed that the trust continued, it is probable that it would have administered it directly itself, instead of turning the fund over to Haynes.  What appellant did in this regard was quite consistent with the later agreements for making advances to Haynes, but not with the tripartite agreement; it being not modified, the appellant would be required to account on the theory that the tripartite agreement still remains operative.

[9] I am of opinion, however, that appellant can receive no benefit in this action from the agreements so erroneously excluded, other than the termination thereby of the trust, for the later agreements did not modify the tripartite agreement with respect to the fund to which it related or in any manner affect such *fund.*  The only *fund* to which they related and upon which they operated consisted of the commis-

sions *to become* due and payable to Haynes in the *future;* and it was provided that the appellant should have a first lien on such commissions for any indebtedness then owing to it by Haynes, as well as for any future indebtedness by him to it, and that plaintiff's claim against Haynes should be subordinate thereto, and also to the heirs of the other four lienors, creditors of Haynes.

It follows that the interlocutory judgment should be modified, by incorporating therein an adjudication that as between the plaintiff, the appellant, and Haynes the tripartite agreement was terminated on August 12, 1898, and by confining the accounting to the period from the date of the tripartite agreement to that time, and, as so modified, affirmed, with costs to appellant; and the decision should be modified, by eliminating any findings of fact or conclusions of law inconsistent with the views herein expressed, and by inserting appropriate findings of fact and conclusions of law in accordance with these views. Settle order on notice. All concur.