Scileppi, J.
The settlor, son of the trustee, established an inter vivos trust on January 24, 1956. As originally executed, the indenture of trust provided that the net income of the trust was to have been distributed to the settlor during his lifetime and, upon his death, the trust was to terminate and the principal was to be distributed to "the issue of the Settlor, him surviving, in equal shares, per stirpes ” or, failing any such issue, to the settlor’s sisters or their issue or, that line failing, to whomever the settlor should appoint by his will, or failing such appointment, as in intestacy.
Under paragraph 14 of the indenture the ‘ ‘ instrument may be altered, amended, or modified by the Settlor at any time or from time to time, but only with the written consent of the *277 Trustee to any alteration, amendment or modification ” (emphasis added). Pursuant to this paragraph, the settlor requested and received the permission of the trustee to amend the indenture on April 18, 1963, November 12, 1965 and on January 26, 1966.
As a result of these amendments, the trust now provides that its duration is to be measured by the lives of the settlor’s parents (settlor’s mother having died on February 11, 1966) and the lives of all of the children and grandchildren of settlor’s parents in being on January 24, 1956, the date of the inception of the trust. During the trust term, the trustee is directed to pay net income to the settlor, his son, for life; upon settlor’s death, to pay net income to settlor’s widow until she die or remarry; upon the death of settlor’s widow or her remarriage, or if she fails to survive the settlor, then on settlor’s death, to pay net income “to or for the benefit of the Settlor’s lawful representative issue * * * in equal shares per stirpes ” during their respective lifetimes; and thereafter, or if there be no living issue of settlor, upon his death or his wife’s death, as the case may be, to pay net income to the lawful representative issue of settlor’s parents, specifically excluding issue who shall be a member of an organized religious order, in equal shares per stirpes.
Upon termination of the trust, the principal is directed to be distributed to the then surviving “lawful representative issue of the Settlor, in equal shares, per stirpes and not per capita ’ ’. Further alternate disposition of corpus is also provided for: first, “ to the then surviving lawful representative issue of the Settlor’s parents, excluding any such issue who shall be a member of any organized religious order, in equal shares per stirpes and not per capita ”; second, in default of such issue of settlor’s parents, then to the appointees designated in settlor’s will; third, in default of such valid appointment by settlor, to the living distributees of settlor.
At the present time, settlor’s father, the trustee, Chester J. Dodge; settlor, Chester J. Dodge, Jr.; settlor’s wife, Tomasine Dodge; settlor’s children, Chester Dodge, III, Joan Dodge, Thomas Dodge, Peter Dodge and Kerry Sue Dodge, all infants under the age of 14 years; settlor’s sisters, Virginia Dodge, Carol D. Van Do orne and Joan M. Dodge, known in religion *278 as Sister Mary Eucharia; and settlor’s niece and nephew, Laurie Van Doorne and Raymond Van Doorne, both infants under the age of 14 years, are alive.
On June 6, 1967 the settlor wrote a letter to the trustee requesting his consent to the revocation of the trust. The trustee, however, refused his consent. Thereafter on September 14, 1967 pursuant to the provisions of EPTL (7-1.9, formerly Personal Property Law, § 23, and Real Property Law, ■§ 118), the settlor, with the properly executed consent of his wife, purported to revoke the trust and sent a notice of revocation to the trustee on October 23, 1967.
The provisions of the statute provide in pertinent part:
“ (a) Upon the written consent, acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property, of all the persons beneficially interested in a trust of property, heretofore or hereafter created, the creator of such trust may revoke or amend the whole or any part thereof by an instrument in writing acknowledged or prove in like manner * * *
“ (b) For the purposes of this section, a disposition contained in a trust created on or after September first, nineteen fifty-one, in favor of a class of persons described only as the heirs, next of kin or distributees (or by any term of like import) of the creator of the trust does not create a beneficial interest in such persons.”
Thereafter, the trustee. instituted this proceeding under CPLR article 77 for a determination that his consent was required in order to revoke the trust and that his refusal to consent was reasonable and proper. The settlor interposed an objection in point of law that the trustee’s consent was not required; that, since his wife, who consented to the revocation, was the only person beneficially interested in the trust for purposes of EPTL 7-1.9, the trust was validly revoked under that statute.
The court at Special Term held that the trust could not be revoked unilaterally because it merely spoke of alteration, amendment or modification and was silent as to revocation. The court further held that revocation could not be accomplished under the provisions of EPTL 7-1.9 because the settlor’s infant *279 children and infant niece and nephew are beneficially interested in the trust and because of their infancy are legally incapacitated to consent to a revocation.
Two primary questions-are raised on this appeal: (1) whether the settlor validly effectuated a revocation pursuant to the provisions of EPTL 7-1.9; and (2) whether, under the terms of the trust, the consent of the trustee is needed in order to revoke.
As noted earlier, EPTL 7-1.9 provides that the creator of a trust may revoke it if he obtains the consent of all the persons beneficially interested in the trust. The statute specifically provides that for purposes of that section “ a disposition, contained in a trust created on or áfter September first, nineteen hundred fifty-one, in favor of a class of persons described only as the heirs, next of kin or distributees (or by any term of like import) of the creator of the trust does not create a beneficial interest in such persons. ’ ’
The settlor contends that, except for himself and his wife, the trust conferred no beneficial interest on any other person since the trust provides for a class gift to persons described variously as “ surviving lawful representative issue ”. In other words, it is the settlor’s position that “ surviving lawful representative issue ” for purposes of EPTL 7-1.9 is a term not merely of like import with “ heirs ”, “ next of kin ” or “ distributees ” but is a term of identical import. The trustee, on the other hand, argues that the infant children of the settlor have a beneficial interest in the trust and their consent (which they cannot give because of infancy) is required.
The resolution of this issue depends in large part upon the intent of the statute and its predecessor sections and upon an understanding of the doctrine of worthier title.
In the celebrated case of Doctor v. Hughes (225 N. Y. 305) Judge Cabdozo told us that the ancient doctrine of worthier title was still with us, not as a rule of law but as a rule of construction. As Judge Cabdozo explained the doctrine:
‘“A man cannot either by conveyance at the common law, by limitation of uses, or devise, make his right heir a purchaser ’ * * * ‘ It is a positive rule of our law ’ * * * ‘ If a man make a gift in taile, or a lease for life, the remainder to his own right heirs, this remainder is void, and he hath the *280 reversion in him; for the ancestor during his life beareth in his body (in judgment of law) all his heires, and therefore, it is truly said that haeres est pars antecessoras ’ * * *
‘ ‘ At common law, therefore, and under common-law conveyances, this direction to transfer the estate to the heirs of the grantor would indubitably have been equivalent to the reservation of a reversion. In England, the rule has been changed by statute * * *. But in the absence of modifying statute, the rule persists to-day, at least as a rule of construction, if not as one of property * * *. We do not say that the ancient rule survives as an absolute prohibition limiting the power of a grantor * * *. But at least the ancient rule survives to this extent, that to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be clearly expressed ” (225 N. Y., at pp. 310-312).
The effect of that doctrine was to nullify an attempted disposition to the heirs of the transferor. Thus, if a disposition were made by A “ to B for life and then to A’s heirs,” the attempt to limit a remainder to the heirs was void and A was deemed to have reserved to himself the reversion. Upon A’s death if he still owned the property his heirs would take by descent.
Prior to the 1951 amendments to section 23 of the Personal Property Law and section 118 of the Real Property Law those statutes simply provided that the creator of a trust could revoke it if he obtained the consent of all those persons having a beneficial interest in the trust property. Thus as a result of the language of the statutes and the decision in Doctor v. Hughes (supra), a host of litigation was spawned involving the revocability of inter vivos trusts containing dispositions to members of a class described in the trust instrument as heirs and next of kin, or .as the persons who would take in the event of intestacy. The problem was always one of construction, the revocability of the trust depending upon a judicial determination of whether the trust created a remainder or a reversion. The problem of construction was extraordinarily difficult and all efforts to formulate a universal rule failed.
As Judge Bromley noted in Matter of Burchell (299 N. Y. 351, 361): "In analyzing an instrument and attempting to explore the almost ephemeral qualities which go to prove the necessary *281 intent, many single factors may be considered. Some considered significant in one case may be deemed minimal in another, since their effect may be counteracted by the presence of other factors. It is impossible to set up absolute criteria to serve as a measuring standard for all cases. In the last analysis, the ultimate determination rests on the particular instrument under consideration, aided by the rule which has grown out of the old common-law doctrine and developed over a long line of cases as a rule which allows the language of the instrument creating a remainder to take effect provided some additional evidence pointing the intent of the grantor is present to buttress the language which would create the remainder.”
Chief Judge Ftjld, dissenting, said (p. 362): “ Reversion, or remainder, however, the volume of litigation on the subject, the diversity of opinion, not to mention the difficulty, frequently, of decision, point the advisability, if not the urgency, of clarifying legislation.”
The Legislature soon responded and the Law Revision Commission entered upon an exhaustive study of the entire area. At the recommendation of the Law Revision Commission, the Legislature amended section 23 of the Personal Property Law and section 118 of the Real Property Law to provide: “ For the purposes of this section, a gift or limitation contained in a trust created on or after September first, nineteen hundred fifty-one, in favor of a class of persons described only as heirs or next of kin or distributees of the creator of the trust, or by other words of like import, does not create a beneficial interest in such persons ” (L. 1951, ch. 180).
The amendment is a narrow solution to a narrow problem. It was expressly designed to overrule Doctor v. Hughes (supra). The legislative intent of the statute is best reflected in the Law Revision Commission Report:
“ Two related problems have recurred conspicuously in the litigation arising under the statutes. For one of these, a satisfactory solution has been reached by decisional law. For the other, the two most recent decisions of the Court of Appeals indicate that legislative action is desirable to remove the necessity for construction by the courts of every trust instrument in which it arises, and to remove an unreasonable obstacle to the revocation of many trusts.
*282 ‘ ‘ When a trust creates an interest in favor of a class of persons to be determined in the future (e.g., a gift to the ‘ children ’ or ‘ issue ’ of the creator of the trust), there may be some representatives of the class, in existence and capable of consenting to a revocation, but these representatives are not necessarily all of the persons who may become members of the class. The question presented in this case is whether the persons yet unborn who may qualify as members of the class are ‘ persons beneficially interested ’ within the meaning of the statute. In 1942, in Smith v. Title Guarantee and Trust Co., 287 N. Y. 500, the Court of Appeals resolved this question. Giving a liberal construction to the statute, the Court held that the trust could be revoked upon consent of the members of such a class then living, even though other members might later be born.”
•X*
“ Section 23 of the Personal Property Law and section 118 of the Real Property Law evince a public policy in favor of revocability of trusts when the creator of the trust and the persons beneficially interested under it are agreed that it should be terminated. It has been recognized judicially that the policy of the statutes would be frustrated if revocation were made to depend upon consent of persons yet unborn who may possibly be included in the group of beneficiaries. In the same way, the statute is frustrated by the requirement that consent be obtained from those persons who will be identified as heirs cmd next of kin when the creator of the trust dies, for until his death they cannot be identified, and upon his death the trust becomes irrevocable in any event.
“ The Commission believes that consent of members of a class described in the trust instrument as heirs and next of kin, or as the persons who would take in the event of intestacy, should be dispensed with without regard to the question whether the creator intended the legal result of creating a remainder interest m them. In their capacity of 1 distributees-upon-intestacy ’ they have no more than an expectancy while he lives, and their own death prior to his, or in many cases the birth of other persons or the marriage of the creator of the trust, will prevent any interest from vesting in them. This uncertainty is inherent in the description of such a group, and exists to the same extent *283 with respect to their inclusion in a class of beneficiaries even where the trust instrument creates a remainder interest in the group.
‘ ‘ The very forip of language typically used to describe such a class indicates that they are thought of not as individuals who may be objects of the special regard of the creator of the trust, but as the group prescribed by law as ultimate recipients of his property failing all other dispositions he may make.
“ The amendment of sections 23 and 118 proposed by the Commission would declare that, for the purposes of these sections, a gift or limitation in favor of a class of persons described, only as heirs or next of kin or distributees of the creator of the trust, or by other words of like import, does not create a beneficial interest in such persons. This provision would not be applicable where the persons who are to take, are identified or where the gift or limitation is to a class other than those expressly covered by the statute.” (1951 Report of N. Y. Law Rev. Comm., pp. 83-86; emphasis added.)
In light of this legislative history, we are of the opinion that the term “ surviving lawful representative issue ” is not a term of like import with heirs, next of kin or distributees. The commission noted at the outset of its report that it was not attempting to change existing case law with respect to gifts made to “ issue ” or “ children ”. The commission recognized that under existing case law a gift “ to issue ” did create a beneficial interest in the representatives of the class then in existence and that their consent to a revocation would be required. The problem in these cases, however, was whether persons yet unborn who may qualify as members of the class were “ persons beneficially interested” within the meaning of the statute. This problem, as the commission noted, had already been solved by. the Court of Appeals in Smith v. Title Guar. & Trust Co. (287 N. Y. 500). In that case the trust provided that upon the death of the settlor the corpus should be paid to the settlor’s daughter, but if she should predecease her it should be paid to her son ‘ ‘ if living, but if dead, then to the lawful issue [of the son] ” (emphasis added). The settlor obtained the consent of her son and daughter to revoke the trust, but the trustee contended that under the terms of the trust instrument unborn children had a beneficial interest in *284 the trust. We held if either of the settlor’s children then had children living ‘ ‘ such children would have a contingent interest in the trust fund and the settlor could not revoke the trust without their consent ” (p. 502) but that unborn children could not be deemed beneficially interested under provisions of the statute (see, also, Gage v. Irving Bank & Trust Co., 248 N. Y. 554).
The sole purpose of the amendments was to codify the doctrine of worthier title as a rule of property (see G-lasser, Trusts, Perpetuities, Accumulations and Powers Under the Estates, Powers and Trust Law, 33 Brooklyn L. Rev. 551, 560). This would obviate the need for judicial construction of every inter vivos trust containing such dispositions and would ‘ ‘ remove an unreasonable obstacle to the .revocation of many trusts ” (1951 Report of N. Y. Law Rev. Comm., p. 83).
The “ unreasonable obstacle ” referred to by the commission was the fact that it would often be impossible to obtain the consent of all those persons presently in existence who might take under the laws of intestacy because the size of the class could often be enormous. This problem, of course, is unlikely to arise where a disposition is made to a class described as “ issue ” or “ surviving lawful representative issue ” because the class is readily identifiable and limited in number.
The settlor argues that, since the gift in the trust instrument is limited to a class (surviving lawful representative issue) whose identity cannot be known until after his death, the term used is one of identical import with ‘' heirs ’ ’ etc., and, therefore, those members of the class presently in existence are not beneficially interested for purposes of the statute. This argument is without merit. The amendment to the statute was not intended to apply to all class gifts, but only to gifts made to a class designated as heirs, next of kin, or distributees or by terms of like import. In our opinion, terms of like import would be: “ to persons who would take in the event of intestacy ”, “to persons entitled to receive my property as if I had died intestate ”, “ then to such persons as would be entitled to inherit my property under the laws of intestacy of the State of New York ”; or any other terms intended to refer to persons who would succeed to creator’s estate as intestate distributees.
*285 The Law Revision Commission specifically noted (p. 83) that the amendment to the statutes was not to apply "where the gift or limitation is to a class other than those expressly covered by the statute ”. And the Practice Commentary to EPTL 7-1.9 (McKinney’s Cons. Laws of N. Y., Book 17B, EPTL [1968 Cum. Supp.], p. 37) states that subdivision (b) of the statute “ does not apply to gifts to classes which do not carry the same connotation as ‘ heirs ’, ‘ next of kin ’ or ‘ statutory distributees ’. ’ ’ The term issue does not carry such connotation and in our judgment does not fall within the purview of the statute because it is modified by the words * ‘ then surviving lawful representative ” (issue).
Under the logic of the settlor’s contention a gift to my “ then surviving sisters ” would come within the meaning of the statute simply because the members of the class cannot be ascertained until the settlor’s death. To uphold the settlor’s contention would violate the clear intent of the statute and would frustrate the legislative purpose.
Although the statute evinces a public policy in favor of easier revocability of inter vivos trusts, the amendments were designed to remedy a narrow problem and, therefore, the statute should be strictly construed. A liberal interpretation will only open up the door to a new host of litigation and that was what the statute intended to avoid.
The settlor’s children, sisters, nieces and nephews who are presently in existence and who concededly, under other provisions of the EPTL, have a beneficial interest in the trust property, are also beneficially interested for purposes of 7-1.9. Since the settlor’s sisters have not consented to revocation and since the infants cannot consent, the settlor has not validly revoked the trust.
Even if we were to hold that the settlor’s wife is the only person beneficially interested in the trust for purposes of EPTL 7-1.9, the settlor could not invoke the provisions of the statute in any event because the terms of the trust setting forth the procedure for revocation must be complied with before the statute comes into play (Matter of Mordecai, 24 Misc 2d 668) and here the trust instrument implicitly, if not expressly, requires the trustee’s consent to a revocation.
*286 It is well settled that where a settlor reserves an unrestricted right to amend, or a right to amend the beneficiaries of the trust, he can effectuate a revocation by amending the trust to make himself the sole beneficiary and then revoke it under EPTL 7-1.9 (formerly Personal Property Law, § 23, and Real Property Law, § 118) (Matter of Woodward, 284 App. Div. 459; Furchgott v. Hottinger, 264 App. Div. 389; Meyer v. Bank of Manhattan Trust Co., 232 App. Div. 228; Faulkner v. Irving Trust Co., 231 App. Div. 87). This rule is recognized by the leading text writers in the area as well as by the American Law Institute (2 Restatement, 2d, Trusts, § 331, comment h; 3 Scott, Trusts [2d ed.], 331.2; Bogert, Trusts & Trustees [2d ed.] § 993).
Since the instant trust instrument reserves an unrestricted (albeit conditional) right to amend, it would follow that the word amendment as used in the trust instrument also means " revoke ’ ’. If the settlor wanted to revoke he would have to receive permission to amend the instrument either to specifically provide that it is revocable or to make himself the sole beneficiary. In essence, this would be a request to revoke which request the trustee under the indenture may refuse. Since the trustee’s consent to an amendment leading to revocation is necessary, his consent to a revocation in the first instance is also necessary.
Although the case law recognizes a technical distinction between the reservation of the right to revoke and the reservation of an unrestricted right to amend, in that where the latter right is reserved the settlor must go through a two-step process in order to revoke, as a practical matter the distinction is one without a difference and should be recognized as being meaningless.
In conclusion, we note that there is no merit to settlor’s contention that he should not have been denied the “ right” to interpose an answer after his objection in point of law to the petition was rejected by the court. His very characterization of his “ right ” to do so ignores the express language of CPLB 404 (subd. [a]) which provides that, if the respondent’s motion is denied, “the court may permit the respondent to answer, upon such terms as may be just ” (emphasis added). Special Term properly determined that “no useful purpose can be *287 served by any answer interposed and especially does this hold true by virtue of the fact that it has been indicated that the answer would refute the factual background set forth by the petitioner, which factual background the Court deems to have no bearing on the simple legal issue involved. ’ ’
Accordingly, the order appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Breitel and Jasen concur.
Order affirmed, with costs to petitioner-respondent and guardian ad litem respondent payable out of the trust.