OPINION OF THE COURT
David B. Saxe, J.
QUESTIONS PRESENTED.
The principal issues that I must resolve are as follows:
I. Did the advice given by the third-party defendant (lawyer II) to the plaintiff to commence a proceeding seeking the advice and direction of the court with respect to (a) an allegedly faulty settlement agreement and (b) the valid *455 ity of the appointment of plaintiff’s mother and sister as cotrustees constitute legal malpractice; and
II. Whether lawyer I who is sued by a former client for professional negligence may cross-complain for contribution against lawyer II who was retained to extricate the client from the situation created by the alleged negligence of lawyer I and where the advice of lawyer II involved choices that were not risk free? This issue is one of apparent first impression in New York (cf. Schauer v Joyce, 54 NY2d 1, which is distinguished).
THE UNDERLYING FACTS AND EVENTS.
A. PRIOR TO THE DEATH OF LEO ROSNER.
(1) On June 1, 1947, Anna and Leo Rosner,- as grantors, executed an irrevocable deed of trust, creating three separate trusts — one for Anna, Leo’s wife, and one for each of their two daughters, June (the plaintiff herein) and Mildred. Leo Rosner was sole trustee and the term of the trusts was measured by the lives of both daughters or the survivor of them. Basically, the income beneficiaries were Anna, June and Mildred and upon termination, the corpus of the trusts for each of the two daughters was given to their respective issue, per stirpes; the corpus of the trust for the benefit of Anna Rosner was given to her.
Leo Rosner was sole trustee; however, on Leo’s death, resignation or failure or refusal to serve, alternate provision was made for two substitute trustees.
(2) As of May 3,1951, the two substitute trustees and the alternate substitute trustee renounced their respective appointments and consented that the grantor might name any person or corporation he chose in their place.
(3) On May 29, 1951, all three trust beneficiaries — Anna, Mildred and June — and Leo Rosner, as trustee, executed an agreement under which they purportedly consented to these renunciations and to the appointment of Leo Rosner as a new substitute trustee, without requiring the further consent of Anna, Mildred or June to make any other substitutions or changes during Leo’s life. Accordingly, three new substitute trustees were then appointed. At the time of the execution of this document, June was under the age of 21 years and Mildred had infant issue.
*456 (4) On November 12, 1963, Leo Rosner resigned as trustee and pursuant to the authority granted by the May 29, 1951 instrument, he removed the three substituted trustees and appointed Mildred Caplow (his daughter) and Anna Rosner (his wife) as his successor trustees.
(5) In a written agreement dated December 16,1963, the trust created for June was revoked in its entirety and the revocation was consented to by June, the grantors and the cotrustees. June released Leo Rosner, Anna Rosner and Mildred Caplow from all claims with respect to the administration of her trust from its inception. In return, she received the transfer from her father of 300 shares of 17 East 84th St. Corporation and the proprietary lease to apartment 5A in the co-operative building located at that address.
(6) In a subsequent written agreement dated February 10, 1966, the agreement dated December 16, 1963, was rescinded and declared void and June renounced all of her right to the net income under the 1947 trust in favor of her three children. The trust as thus amended and reciting the May 29, 1951 modification, was declared to remain in full force and effect.
(7) On March 27, 1973, Leo and Anna as grantors, Mildred and Anna as successor cotrustees and June as beneficiary entered into another agreement rescinding the agreements of December 16, 1963 and February 10, 1966 and reinstating June as beneficiary of the 1947 trust. The 1947 trust agreement was declared to be irrevocable and reinstated, and any changes or modifications with respect to it, other than the appointment or substitution of trustees, were stated to have no validity.
(8) On August 20, 1977, Leo Rosner died.
B. AFTER THE DEATH OF LEO ROSNER.
(9) After Leo’s death June became increasingly aware of what she believed to be serious irregularities and mismanagement of the trust assets and retained defendant Louis J. Paley and his law firm to represent her. Later, defendant Wishod and his firm were also retained. During subsequent negotiations with the cotrustees, an investigation of the trust books and records was made by accountants on *457 plaintiff’s behalf. This report stated, inter alia, that inadequate records and documents were being kept, that many of them normally expected to be kept were missing and that the Cen-Par Operating Corporation’s books indicated some improprieties exceeding $200,000 in amount.
(10) Paley and Wishod drafted a petition on plaintiff’s behalf seeking a judicial accounting. However, that petition was not filed and instead, on the attorneys’ advice, plaintiff entered into a settlement agreement dated November 1, 1978 with Anna Rosner, Mildred Caplow, Alvin Caplow (Mildred’s husband) and Cen-Par Operating Corp. (which operated a hotel constituting a major asset of the trust). The agreement provided, inter alia, as follows:
(a) June agreed not to institute the proceeding against the trustees and to release all her rights to a judicial accounting, subject to her right to receive payments from the trust equal to those made to Mildred.
(b) June was appointed as a third cotrustee of the trusts.
(c) Anna waived any claims to receive additional income or payments from the trust to match those made to Mildred or June but in the future would receive equal amounts with Mildred and June.
(d) Anna covenanted to make a will or codicil, and to keep it in force during her lifetime in which she would appoint June (or her issue) as the sole beneficiary of one half of the principal of the marital deduction trust provided for her in the will of her deceased husband, Leo Rosner.
(e) June was appointed to participate in the management of the Century Paramount Hotel, with annual compensation of $18,000, as long as Alvin Caplow continued as manager.
(11) In March, 1979, June terminated her retainer of defendant attorneys and retained the firm of Hawkins, Delafield and Wood, Esqs. After reviewing the relevant documents they determined that under EPTL 10-5.3 Anna Rosner’s agreement to appoint June as the beneficiary of one half of the corpus of the marital deduction trust was not enforceable, despite the assurance of her former attorneys that this agreement was irrevocable and enforceable as a matter of contract law. In their advice to her regarding *458 the settlement agreement, June also alleged that defendant attorneys failed to tell her that a serious question existed as to the validity of her mother’s and sister’s appointment as trustees and to her own appointment as cotrustee.
(12) A review of the situation with her new attorneys also caused plaintiff June to conclude that, having assumed the duties of a cotrustee with knowledge of possible irregularities and mismanagement, she faced potential liability from the remaindermen if she failed to seek a judicial accounting.
Accordingly, in May, 1979, on the advice of her new attorneys, plaintiff began a proceeding in the New York Supreme Court (Rosner v Caplow, NY County, Index No. 11001/79) seeking a declaration of rights and duties, including instructions and directions with respect to her obligation to seek an accounting and determine the validity of her mother’s and sister’s appointments as cotrustees of the 1947 trust, as well as of her own appointment as cotrustee. After this lawsuit was commenced, Anna Rosner revoked the codicil appointing plaintiff as a beneficiary of the marital deduction trust.
(13) In June of 1979, plaintiff June Rosner commenced this legal malpractice action, the details of which may be summarized as follows:
Plaintiff Rosner retained defendant attorneys to advise her in connection with certain claims she had against the trustees (her mother and sister) of the 1947 trust as an income beneficiary. She alleged that the defendants recommended that she enter into a settlement agreement (which she did) in which, as beneficiary of the trust, she released all her claims against the trustees, waived her rights to a judicial accounting, and agreed not to initiate a proposed accounting proceeding in return for what she was given to understand were enforceable covenants and other valuable consideration.
A major element of the consideration provided in the settlement agreement was her mother’s covenant to exercise the aforesaid testamentary power of appointment — a share estimated to be then worth at least $650,000.
*459 Plaintiff Rosner specifically inquired of the defendants whether such an agreement by her mother was enforceable and was informed and later reassured in a letter to her from defendant Louis Paley that it was enforceable as a matter of contract law, that it irrevocable and that it was immune from any subsequent change of heart or family problems that might arise. It is plaintiff’s complaint that this advice was indisputably erroneous because EPTL 10-5.3 specifically provides that a contract to exercise a testamentary power cannot be enforced.
Among the other elements of consideration received by plaintiff under the settlement agreement was her appointment as a third cotrustee of the trust. It is plaintiff’s further complaint that defendants failed to advise her of the invalidity of her mother’s and sister’s appointment as cotrustees and that a serious question existed as to the validity of her own appointment as cotrustee; further, that by acting as a trustee (whether duly appointed or de facto) she would be exposed to liability for breach of fiduciary duties for failing to seek an accounting from her two cotrustees for their acts and alleged misdeeds during their trusteeship, of which she became aware prior to the execution of the settlement agreement.
On the basis of the foregoing, as noted above, plaintiff brought a legal malpractice action against Paley and Wished in June, 1979.
By service of an amended complaint in October, 1981, the additional defendants were added.
(14) The third-party plaintiffs served a complaint against the third-party defendants alleging that if it was malpractice for them to recommend that plaintiff enter into the settlement agreement, then, as more particularly set forth in their complaint, the third-party defendants contributed to or aggravated plaintiff’s injuries by legal malpractice in their subsequent representation of plaintiff and, accordingly, the third-party plaintiffs seek contribution from them.
(15) The third-party defendants now move to dismiss the third-party complaint pursuant to CPLR 3211 (subd [a], par 7) on the grounds (1) that the actions alleged therein do *460 not constitute a cause of action in legal malpractice; and (2) that public policy precludes the maintenance of the third-party action.
DISCUSSION OF THE LEGAL ISSUES
I.
First, with respect to the procedural standpoint of the motion, the court need not (and does not) consider this motion to dismiss as a motion for summary judgment; this is permissive but not mandatory. (CPLR 3211.) Further, the language of CPLR 3211 (subd [c]) states that on a motion under 3211 (subd [a]) either party may submit evidence that would properly be considered on a motion for summary judgment. (Carnival Co. v. Metro-Goldwyn-Mayer, 23 AD2d 75; Scarlett Letters v Compugraphic Corp., 61 AD2d 930.) Pursuant to CPLR 3211, the courts have granted a motion to dismiss after considering evidence introduced by the defendant. (Henderson v Aetna Cas. & Sur. Co., 81 AD2d 702, affd 55 NY2d 947; Hawkins v McCluskey, 79 AD2d 853; Guggenheimer v Ginzburg, 43 NY2d 268, 275; Rovello v Orofino Realty Co., 40 NY2d 633.)
In any event, the court perceives the issue here to be a legal one and there are no factual issues involved in the documents accompanying the motion to dismiss which contradict the facts pleaded in the third-party complaint.
II.
The claimed malpractice on the part of the third-party defendants herein (lawyers II) arose out of their alleged failure to exercise due care and sound professional advice in advising plaintiff, or their intentional or negligent failure to advise her, in connection with the commencement of Rosner v Caplow (supra) proceeding referred to in paragraph 12, above.
After consultation with her new attorneys (lawyers II) and after her accountants’ investigation of trust affairs, plaintiff June Rosner found herself in a dilemma. If she did nothing and relied on the settlement agreement she would always be subjected to the possibility of a change of heart on the part of her mother who always had the power to *461 revoke the unenforceable power of appointment covenant. The family strife and emotional discord in the past, which resulted in modifications of the terms of the 1947 trust, suggested the possibility that such a change of heart might occur in the future. And should such a revocation take place after the Statute of Limitations had run with respect to the alleged malpractice of defendants, she would undoubtedly be without any recourse in this respect.
In addition, prior to her designation as cotrustee plaintiff was made aware by her accountants of the alleged existence of irregularities in the trust administration, but claims that she was not advised by defendants as to her legal responsibilities as cotrustee in this respect before signing the settlement agreement, thus creating a non-risk-free dilemma. If she did nothing now she could be sued later for breach of fiduciary duty by infant remaindermen whose interests were adversely affected while she was ostensibly protecting her own interests. On the other hand, if she went forward with her petition for instructions and directions, she faced the real possibility that the power of appointment running to her would be revoked and that other dire consequences of her breach of the settlement agreement would occur (all of which happened).
In the light of this predicament, the third-party defendants exercised their judgment and advised plaintiff to seek the court’s guidance (Matter of Rothko, 43 NY2d 305), and the proceeding, Rosner v Caplow (NY County, Index No. 11001/79, supra) was commenced. Since this court is not bound by the legal conclusions (the allegations of negligence) set forth in the third-party complaint (Torrey Delivery v Chautauqua Truck Sales & Serv., 47 AD2d 279) the question at issue in this case is strictly a legal one: Was the advice given by the third-party defendant lawyers indisputably erroneous so as to constitute malpractice? Such an issue may be decided by this court in ruling on the motion to dismiss before it. (Gimbel v Waldman, 193 Misc 758, 761; Parksville Mobile Modular v Fabricant, 73 AD2d 595.)
I hold that the advice rendered was not indisputably erroneous and did not constitute malpractice. In my opinion, there was a valid basis for the third-party defendants *462 to advise plaintiff to commence a proceeding seeking the advice and direction of the court, at the time when this advice was given and before the Caplow proceeding was instituted, as opposed to the alternative of resting on a faulty settlement agreement with its potential attendant hazards. And, if only one valid basis existed for the advice given, it was sufficient for this purpose.
The third-party defendants advised the plaintiff to apply to the court for instructions as to whether she should seek a judicial accounting to protect her from potential liability to the remaindermen despite her waiver of this right as a beneficiary of the 1947 trust, since this had nothing to do with any potential liability on her part as cotrustee. The informal accounting provided for in the settlement agreement was simply designed to accomplish the “sole purpose” of insuring that plaintiff had received payments equal to those made to her sister, Mildred. It would not require the accounting parties to prepare a complete, formal accounting from which plaintiff might question the underlying reported transactions or other information contained in it and determine her potential liability.
By virtue of her possession of her accountant’s report setting forth very disturbing findings pertaining to the 1947 trust, plaintiff was aware, prior to beginning her service as cotrustee, of the existence of irregularities, inconsistencies and lack of supporting documentation of transactions in the administration of the 1947 trust. However, she allegedly was not advised by defendants prior to her signing of the settlement agreement of the potential liability that might ensue by virtue of her subsequent service as cotrustee.
A fiduciary who knows that a cofiduciary has breached a fiduciary duty is himself guilty of a similar breach if he fails to object or to take steps to rectify the situation. (Matter of Rothko, 43 NY2d 305, 320, supra; Restatement, Trusts 2d, § 224.) This rule applies even if the breach was committed by a predecessor (in time) fiduciary (Restatement, Trusts 2d, § 223) and has been adopted in New York (Bank of New York v New Jersey Tit. Guar. & Trust Co., 256 App Div 609, 611, mot for rearg den 257 App Div 806). Matter of Prager v Hart (106 Kan 14) cited by the third- *463 party plaintiffs, is not in point since in that case the court was unwilling to charge the trustee for failure to do a moot act which would cost the trust money. There was no duty to proceed because the beneficiaries had failed to establish that the predecessor trustee was solvent and the evidence suggested that he was not. There is no suggestion in this case that either trustee was not solvent.
Even if plaintiff’s appointment as cotrustee under the settlement agreement were invalidated, she could still face fiduciary liability as a de facto trustee (Matter of Dakin, 58 Misc 2d 736; Matter of Wohl, 36 NYS2d 926).
Plaintiff could not resign without following proper procedure (see Restatement, Trusts 2d, § 106), nor could she avoid liability for breaches of trust committed prior to her resignation. (Woodbridge v Bockes, 170 NY 596; Hart v Equitable Life Assur. Soc. of U. S., 172 App Div 659.) Thus, to avoid liability upon resignation, plaintiff would have to account and without revealing her knowledge of prior irregularities in the administration of the two cotrustees, the decree on accounting would not effect a discharge of liability with respect to matters not embraced in the account. (Matter of Ryan, 291 NY 376; Matter of Long Is. Loan & Trust Co., 92 App Div 1, affd 179 NY 520.)
Plaintiff could not have resigned by obtaining the consent of the beneficiaries because one of them — Jordon L. Cerruti, a presumptive remainderman — was an infant; and the waiver of a parent cannot bind him. (Matter of Garvin, 256 NY 518; Woodbridge v Bockes, 170 NY 596, 600; Jongers v First Trust & Deposit Co., 147 Misc 260, 266.)
For the foregoing reasons, I hold that the advice given by the third-party defendants to plaintiff to apply to the court for instructions and directions was correct and did not constitute malpractice.
Justice Stecher, in his decision in the Caplow proceeding, held that June Rosner was entitled to bring on her petition for instructions and directions of the court. He found that although June Rosner as beneficiary had expressly waived her right to an accounting in the 1978 settlement agreement, her three children were entitled to *464 one for the protection of their remainder interests and ordered that one be prepared covering the period from November 12, 1963 (when Anna Rosner and Mildred Cap-low were appointed successor cotrustees) through December 31, 1979. Thus, the decision to order an accounting for the benefit of the three remaindermen set in motion the machinery which gave them the very protection of their interests which plaintiff’s petition sought to accomplish. At the same time, by thus exposing the acts of administration of the trust during the entire period of service of the two cotrustees to detailed scrutiny and the opportunity to object, it solved plaintiff’s problem with respect to any potential liability to the remaindermen on her part. Furthermore, the Caplow children waived their right to seek an accounting and thereby eliminated any potential liability of plaintiff to them.
Plaintiff’s application to the court thus relieved her of any potential liability as trustee and, in my opinion, justified her decision to seek the court’s guidance.
The third-party defendants’ advice to challenge the appointment of plaintiff’s mother and sister as cotrustees was also not indisputably erroneous. It was given on the basis of their study and analysis of the applicable statutes and case law. The issue involved is novel and seemingly one of first impression, namely, may an infant’s ratification of a purported statutorily authorized modification of an inter vivos trust (EPTL 7-1.9). relate back to the time when such modification was attempted, to defeat the intervening rights of remaindermen born in the interim? Otherwise put, is this agreement which failed to comply with the statute as of the date made void as a matter of statutory construction or public policy?
Justice Stecher, in upholding, in the Caplow proceeding, the validity of the May 29, 1951 modification, pursuant to which plaintiff’s mother and sister subsequently became the trustees, found that at that time June, an income beneficiary and a party to the agreement, was under the age of 21 and that Stacy, the sole remainderman in being, was only two years old; further that the individual consents of June and Stacy were then required (Matter of Dodge, 25 NY2d 273); also, that the three Wachtel *465 children and Amy Caplow, then unborn, were not remaindermen beneficially interested when the agreement was executed (Smith v Title Guar. & Trust Co., 287 NY 500). The court noted that had a proceeding been brought shortly after the execution of the 1951 agreement to determine its validity, it would have been declared unenforceable for lack of consent of June and Stacy (Matter of Dodge, supra, p 285).
However, when in 1979 the issue of enforceability was presented to the court, Stacy then ratified the modification. The court also found that June’s ratification was implicit in all subsequent agreements when she was of age.
The court reasoned that the May 29, 1951 agreement was merely voidable and not void; that Stacy may now consent to the modification and that just as an infant’s contract may be ratified ab initio on attaining majority, so in this case an infant’s consent may relate back to the time of the act for which consent is given. This conclusion was reached on the basis of analogy and consistency with the laws of infancy generally. No direct authority in point was cited, thus seeming to indicate that there was no previously settled law on the issue. I note that Justice Stecher’s decision is presently being appealed merely to indicate the continuing difference of opinion as to the state of the law involved.
As a further indication that there was no settled law on this particular point, the third-party complaint states:
“Upon information and belief, Forlenza intentionally and negligently failed to advise Rosner that:
“(c) There was a substantial likelihood that Anna and Mildred would be held by a court to have been ratified to act as Trustees of the 1947 Trust.” (Emphasis supplied.)
Thus, in their complaint, the third-party plaintiffs themselves evinced doubt as to whether the governing principle of law was indisputably settled.
I hold that the third-party defendants’ advice in this request represented their best judgment on a novel point of law at the time it was given, that it was not indisputably erroneous, and therefore it did not constitute malpractice.
*466 III.
The third-party plaintiffs argue that under the directly controlling authority of Schauer v Joyce (54 NY2d 1, supra), their complaint states a legally sufficient contribution claim. I think that the factual situation present in this case is substantially different and therefore, the Schauer ruling should not be controlling.
The Schauer case involved a situation which, for the first time, required the Court of Appeals to decide a controversy wherein lawyer I, who was sued therein for malpractice, sought contribution from lawyer II who was subsequently retained by the client on the same matter. In Schauer, the court held on the fact therein that, despite lack of privity, contribution was available where lawyer II negligently did not pursue settled professional procedure (namely, in not quickly obtaining a new hearing on alimony and support and in failing to seek reinstatement of the vacated alimony judgment) which posed no risks because no procedural choice on his part was involved. This type of negligence on the part of lawyer II could have contributed to or aggravated Schauer’s injuries and is of the type of claim encompassed by CPLR 1401.
The court did not rule on the question presented in the instant case, namely, whether contribution would be available when the malpractice of lawyer I left lawyer II with no risk-free alternative, thereby compelling lawyer II to exercise his legal judgment and choose a proper course of conduct from the alternatives available.
This distinctive situation had previously been presented to and decided by the California courts, which perceived the difference between the factual situation presented by the Schauer case and this case. They recognized the crucial difference between the situation in which the first lawyer challenges the choice of non-risk-free alternatives available to the second lawyer (this case) and that in which the first lawyer challenges the failure of the second lawyer to perform a risk-free act in furtherance of his client’s interests (the Schauer case).
The California cases against the second lawyer were dismissed when the challenge was to his choice of alterna *467 tives and upheld when the challenge was simply to the failure to act. (Compare Gibson, Dunn & Crutcher v Superior Ct. of Los Angeles County, 94 Cal App 3d 347; Held v Arant, 67 Cal App 3d 748, with Sigel v Superior Ct. of Los Angeles County, 118 Cal App 3d 226; Parker v Morton, 117 Cal App 3d 751.)
Accordingly, in my opinion, on the distinctive facts present in this case, I hold that Schauer v Joyce is not controlling and that the third-party complaint does not state a legally sufficient contribution claim.
To fail to recognize and give effect to the foregoing distinction in a case like this one would force the second lawyer to defend it at a decided disadvantage because the Canons of Ethics (Code of Professional Responsibility, canon 4) preclude him from disclosing the advice he gave his client; also, the privilege against disclosing a confidential communication established in CPLR 4503 can only be waived by the client. Absent such a waiver by the client, the second lawyer would be seriously handicapped and unable to defend himself properly by not being able to reveal the advice he gave, the client’s reaction to it and the conclusions reached and directions given by the client. Since, in this case, plaintiff has not sued lawyer II, the rule that the commencement of a malpractice action waives the privilege is not applicable. (Rosenstiel v Rosenstiel, 43 Misc 2d 462, revd on other grounds 21 AD2d 635, affd 16 NY2d 64, cert den 384 US 971, cert den sub nom. Wood v Wood, 383 US 943.)
Further, permitting a third-party complaint to be maintained in these circumstances would create a conflict of interest by causing the second lawyer to choose between the alternatives of avoiding a lawsuit by lawyer I or making a decision in the best interests of his client. This conflict would deprive the client of his right to the undivided faithful professional representation of lawyer II or would require lawyer II to withdraw from the litigation and thus subject the plaintiff client to harm by requiring the substitution of new counsel.
In my opinion, the third-party complaint should be dismissed as violative of sound public policy.
*468 For all the foregoing reasons the motion to dismiss the third-party complaint is granted.