JUNE ROSNER, Appellant, v MILDRED CAPLOW et al., Respondents, and JEFFREY WACHTEL et al., Appellants, et al., Respondents.

First Department, November 23, 1982

**APPEARANCES OF COUNSEL**

*Philip R. Forlenza* of counsel (*Katharine A. Rundle* with him on the brief; *Hawkins, Delafield & Wood,* attorneys), for appellants.

*Ralph K. Wood* of counsel (*Louis Haimof* and *Harry T. Nusbaum* with him on the brief; *Blum, Haimoff, Gersen, Lipson, Garley & Niedergang,* attorneys), for Mildred Caplow and another, respondents.

**OPINION OF THE COURT**

SANDLER, J.

In this special proceeding in the nature of an action for a judgment declaring the parties' rights under three *inter vivos* trusts created on July 1, 1947 by Anna and Leo Rosner, petitioner June Rosner and additional respondents Jeffrey, Wendy and Marcy Wachtel appeal from an order and judgment (one paper) of the Supreme Court, New York

County (STECHER, J.) entered October 20, 1981, determining, *inter alia,* that an infant's later ratification of a purported 1951 modification of the trust may relate back to defeat certain intervening rights of nonconsenting remaindermen born in the interim, and therefore that respondents-respondents Anna Rosner and Mildred Caplow were validly appointed trustees pursuant to a power created in one of the settlors, Leo Rosner, by the 1951 modification (105 Misc 2d 592).

This appeal presents an issue of first impression: whether a contingent remainderman and an income beneficiary who were infants at the time of a purported modification of an irrevocable *inter vivos* trust may at a later date expressly or impliedly ratify that modification after reaching majority, *nunc pro tunc,* when at the time of such later ratification there are additional contingent remaindermen who cannot consent to any modification because of their infancy.

Central to a resolution of this issue are the provisions of EPTL 7-1.9[1] which provide in effect that the creator of an irrevocable trust may revoke or amend it only upon the written consent of all persons beneficially interested.

By agreement dated July 1, 1947, Anna and Leo Rosner created three *inter vivos* trusts, one for the benefit of Anna Rosner, and one each for settlors' two daughters, respondent Mildred Caplow (nee Rosner) and petitioner June Rosner. The duration of the trusts was for the lives of Mildred and June. Leo was designated sole trustee; substitute trustees were Jacob Fisher and Samuel Ecker with Frances Ecker as alternative for Samuel, with no provision for the further designation of trustees; by its terms the trusts were designated irrevocable.

The trust agreement provided that if Anna died before Mildred and June the assets of her trust would be divided equally between her daughters' trusts. Likewise, if Mildred or June died before the others and had no issue surviving, her trust would be divided equally between the surviving trusts. If at the time of death they had surviving

---

1. EPTL 7-1.9 re-enacts section 118 of the Real Property Law and section 23 of the Personal Property Law. Throughout the relevant period the applicable law was essentially identical.

issue, their issue would take all rights and benefits of the trusts per stirpes. Thus, any child of Mildred or June would upon birth become a contingent remainderman and thus beneficially interested in his or her mother's trust. (*Schoellkopf v Marine Trust Co.*, 267 NY 358, 362.)

On May 29, 1951 Leo, Anna, Mildred and June executed a document, purportedly modifying the trust agreement of July 1, 1947 (hereafter the Trust), in which they consented to the renunciations of their appointments by the substitute trustees, and conferred on Leo the right to appoint substitute trustees during his lifetime without requiring the further consent of any of the income beneficiaries.

It is undisputed that on the date of the execution of the modification agreement June was under the age of 21, and Mildred had a two-year-old daughter, respondent Stacy Caplow, the then sole contingent remainderman. Thereafter the class of contingent remaindermen (hereinafter remaindermen) was increased by the births of four members: On March 12, 1953 June's son Jeffrey Wachtel was born, and on February 12, 1956 and October 9, 1957 Wendy and Marcy Wachtel were born. Mildred gave birth to a second daughter, Amy Caplow, in or about 1958.

On November 12, 1963, by written instrument, and pursuant to the power granted him in the 1951 modification, Leo resigned as trustee, removed all substitute trustees, and appointed Anna and Mildred as cotrustees in his place.

On December 16, 1963, Leo and June entered into a letter agreement wherein June renounced any interest in the trusts in return for the shares and proprietary lease of June's residence, a co-operative apartment owned by Leo. A separate formal agreement of that date, signed by Leo, Anna, Mildred and June, revoked June's trust and recognized Anna and Mildred as successor trustees.

On February 10, 1966, Leo, Anna, Mildred and June entered into an agreement in which the December 16, 1963 agreement was rescinded, June renounced her rights to the income from the trusts, effective December 16, 1963, and June's trust was divided into equal parts for the benefit of her three infant children.

On March 27, 1973, Leo, Anna, Mildred and June entered into a further agreement which confirmed the prior rescission of the December 16, 1963 agreement, rescinded the February 10, 1966 agreement in which June had renounced her rights, and reinstated the 1947 Trust as originally written, except for substitutions of trustees. Each of the aforesaid agreements except the 1963 letter agreement referenced the 1951 modification in a "whereas" clause.

On August 20, 1977, Leo died.

On November 1, 1978, after June had challenged the administration of the Trust and was permitted an examination of the Trust records, she waived her right to an accounting in exchange for her designation, by Anna and Mildred, as a third cotrustee, an agreement by Anna to keep in force a will leaving June one-half the residue of Leo's estate, and a "no-show" consultant position for June at $18,000 or more annual salary with the Century-Paramount Hotel, the Trust's main asset.

Thereafter, June brought this proceeding for a declaration concerning her status with respect to the Trust, for an accounting, and for removal of Anna and Mildred as trustees. Special Term ultimately determined that June's appointment in 1978 as a trustee was void because the 1947 Trust reserved no power of amendment, and under the 1951 modification agreement only Leo could appoint new trustees, which power died with Leo in 1977. The court also held that June had waived her right to an accounting in the 1978 settlement agreement (105 Misc 2d 592, 601). No appeal has been taken from these determinations.

In March, 1980, answering the supplemental petition naming Mildred's and June's children as respondents, Stacy for the first time stated that she approved and ratified the 1951 modification. Both Stacy and Amy ratified "any modifications to date". The Wachtel remaindermen answered that they do not consent to the 1951 modification, and cross-petitioned for an accounting and a determination of the validity of the appointments of Anna, Mildred and June as cotrustees. Each of the parties to this proceeding has effectively requested to be retained as trustee, or named as trustee in the event of vacancy.

The issue presented on this appeal is the validity of the 1951 amendment giving Leo the right to designate trustees without the consent of other beneficiaries of the Trust.

In 1951, June, although a married woman, was still a minor, and gave what purported to be her consent. Stacy, then two years old, certainly did not consent. The court below recognized that if a proceeding had been brought shortly after the execution of the 1951 amendment to determine its validity, the amendment would have been declared unenforceable under EPTL 7-1.9 for lack of consent by June and Stacy, because of their minority. (*Whittemore v Equitable Trust Co.,* 250 NY 298, 300; *Matter of Dodge,* 25 NY2d 273, 285.) The questions thus presented are whether Stacy's consent to the 1951 amendment, first given in 1980, may be deemed effective *nunc pro tunc* to 1951, and whether June's actions in executing documents in 1963, 1966 and 1973, reciting the existence of the 1951 modification, operate as a ratification of the 1951 modification, *nunc pro tunc,* in derogation of the rights of the Wachtel remaindermen. If the answer to either question is "no", then the order and judgment below must be modified to declare the 1951 modification invalid, that Anna and Mildred were not duly appointed cotrustees, and directing the appointment of a new trustee or trustees.

Turning first to Stacy's 1980 ratification, we find that it is clearly untimely. Until 1980, Stacy did not give any consent to the 1951 amendment, purported or otherwise. When the Wachtel children were born in 1953, 1956 and 1957, they immediately became remaindermen, and thus became "persons beneficially interested" in the Trust. Stacy Caplow was still an infant at that time and could not have consented to the 1951 modification even if she had wanted to do so. The Wachtel remaindermen were thereby entitled, pursuant to EPTL 7-1.9, to have the Trust provisions remain as they were when the remaindermen's rights under the statute "vested", unless thereafter modified with the consent of all persons beneficially interested.[2]

---

2. We observe that under the law of agency, not directly applicable here because none of the 1951 signatories purported to act on Stacy's behalf, it is well settled that ratification cannot date back to destroy intervening rights of third persons. (2 NY Jur 2d, Agency, § 158; 2 Williston, Contracts [3d ed, 1959], § 278A.)

Furthermore, when Leo, one of the settlors, died in 1977, no change in the Trust provisions was possible, since the consent of the "creator", required by EPTL 7-1.9, has been construed to require the consent of *all* the creators or settlors. (*Culver v Title Guar. & Trust Co.*, 296 NY 74, 77-78; see, also, Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 1-2.2, p 10), stating that unless the context requires otherwise, "whenever 'creator' is encountered in this law, it should be understood as referring to testators and settlors, and, depending upon the context, to grantors and donors as well". Accordingly, Stacy's 1980 consent or ratification was ineffective insofar as it purports to validate the 1951 amendment now challenged by the Wachtel remaindermen.

The same reasoning applies to render ineffective as against the Wachtel remaindermen any supposed ratification of the 1951 modification by June. First, it is not at all clear that June effectively ratified the 1951 modification when she executed documents in 1963, 1966 and 1973 which merely referenced the modification. The Court of Appeals held in *Matter of Ryan* (291 NY 376, 417): "To establish a ratification by a *cestui que trust,* the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also in a case like the present that the *cestui que trust* was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter. Confirmation and ratification imply to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it. The *cestui que trust* must therefore not only have been acquainted with the facts, but apprised of the law, how these facts would be dealt with by a court of equity. All that is implied in the act of ratification, when set up in equity by a trustee against his *cestui que trust, must be proved, and will not be assumed.*" (Emphasis in original.)

However, we need not determine whether ratification by June was established, for even if she did ratify the 1951 amendment, such ratification could not serve to validate the amendment because it would have occurred, at the

earliest, upon her execution of the December 16, 1963 agreement. As of that date, all of the Wachtel remaindermen had been born, they were persons beneficially interested, and there could be no modification or revocation without their consent.

Accordingly, we hold that the 1951 modification was not consented to by "all the persons beneficially interested" as required by EPTL 7-1.9, and therefore all designations of substitute trustees by Leo pursuant to that modification are invalid. A new trustee, or trustees, should be designated by the court. We express no opinion whether such designation should be from among the parties to this action.

The order and judgment should be modified to declare that the 1951 modification and all designations of substitute trustees pursuant to that modification are invalid, to provide for the designation of a substitute trustee or trustees, and otherwise affirmed with costs to all parties filing briefs payable out of the corpus of the Trust.

Settle order, which may provide for a 30-day stay.

KUPFERMAN, J. P., SULLIVAN, ROSS and LYNCH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on October 20, 1981, modified to declare that the 1951 modification and all designations of substitute trustees pursuant to that modification are invalid, to provide for the designation of a substitute trustee or trustees, and otherwise affirmed with costs to all parties filing briefs payable out of the corpus of the Trust.