BANCO DI ROMA, Respondent, v MERCHANTS BANK OF NEW YORK, Appellant.

First Department, March 1, 1983

APPEARANCES OF COUNSEL

*Ronald H. Alenstein* of counsel (*Fran M. Jacobs* and *Peter C. Neger* with him on the brief; *Shea & Gould,* attorneys), for appellant.

*Frank O. Fredericks* of counsel (*David B. Julie* with him on the brief; *Frank & Fredericks,* attorneys), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

The plaintiff has recovered, exclusive of interest, a summary judgment, by motion in lieu of a complaint, for $844,000, the amount of cashier's checks issued by the defendant on October 27 and 28, 1981 in favor of two

corporations the accounts of which, at the plaintiff and the defendant banks, were controlled by Samuel Behar. Opposing summary judgment, the defendant contended that the cashier's checks were procured in a fraudulent check-kiting scheme in which the plaintiff was a knowing participant, that plaintiff lacked the good-faith requisite to a holder in due course, and that the defendant had a counterclaim of an amount larger than the plaintiff's claim.

Hampered by a lack of opportunity for disclosure, the defendant was able only to outline the following charges. For about a year prior to the checks in suit Behar had been drawing checks on his corporate accounts with the plaintiff without sufficient funds on deposit to cover them. The checks would then be deposited in Behar's corporate accounts with the defendant where an employee of the latter obligingly gave them immediate credit. Behar then drew checks in favor of the defendant from the accounts with the defendant which, in exchange, issued cashier's checks to his corporations. The cashier's checks were then deposited in the corporate accounts with the plaintiff, thus satisfying the overdrafts. The amounts involved escalated rapidly. Prior to the dishonor of the cashier's checks in suit hundreds of thousands of dollars were circling daily through the accounts.

Special Term held that a cashier's check, unlike an ordinary one, is accepted by the maker bank upon issuance and that there is, therefore, an absolute duty upon the bank to pay it upon presentment absent any irregularity on its face. It further held that the plaintiff was a holder in due course since, as a depository bank, it gave value by permitting withdrawals, and that it took without notice of, and hence free of, defenses. It also held that the issue of fraud was separate from the defendant's obligation to pay and that the counterclaim, being independent, should be dismissed without prejudice to its assertion in a plenary action.

We agree that a bank usually must honor its cashier's checks because, pursuant to subdivision (1) of section 3-410 of the Uniform Commercial Code, issuance constitutes acceptance which in turn gives rise to an obligation to pay (*Kaufman v Chase Manhattan Bank, N.A.,* 370 F Supp

276; cf. *Dziurak v Chase Manhattan Bank,* 58 AD2d 103, affd 44 NY2d 776). We reverse, however, on an exception to this rule which has been recognized, if not directly decided, in New York when the defense is raised that the cashier's check was procured by fraud. In *Florida Frozen Foods v National Commercial Bank & Trust Co.* (81 AD2d 978), the defendant bank asserted the fraudulent procurement of its cashier's check as a defense. By looking to the merits of this defense — although finding that the assertion did not amount to fraud — the court implicitly recognized that fraud would have been a valid defense had it been established. There would have been no need for the court to have looked to the merits of the defense if the bank could not have dishonored the cashier's check under any circumstances. (See, also, *Kaiser-Georgetown Community Health Plan v Bankers Trust Co. of Albany, N. A.,* 110 Misc 2d 320; *TPO Inc. v Federal Deposit Ins. Corp.,* 487 F2d 131.)

The plaintiff contends that the defendant's fraud allegations are without proof and that mere speculation should not serve to preclude summary judgment. We find that the sheer volume of cashier's checks purchased by Behar with checks drawn on the plaintiff out of funds that would have been insufficient without the later covering cashier's checks raises a suspicion of fraud that should at least entitle the defendant to discovery. When we couple this with the allegation that Behar or his corporations owed the plaintiff $1,000,000 upon which payment was made in part from funds derived from the defendant's cashier's checks the circumstances exude such uncertainty as will preclude the drastic remedy of summary judgment (see *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). The same circumstances render it unclear whether the plaintiff was a holder in due course or took the checks with notice of possible defects.

The plaintiff argues that the defendant did not dishonor timely the cashier's checks of October 27 by the midnight deadline as prescribed by section 4-301 (subd [1], pars [a], [b]) of the Uniform Commercial Code. The need for this statutory dishonor has been called into question by the defendant's assertion of a customary banking practice which it claims rendered timely its dishonoring (see *David*

*Graubart, Inc. v Bank Leumi Trust Co. of N. Y.,* 48 NY2d 554).

Accordingly, the order and judgment, Supreme Court, New York County (G. B. SMITH, J.), both entered June 2, 1982, granting plaintiff summary judgment in lieu of a complaint, denying defendant's cross motion for a stay of execution of judgment pending determination of defendant's counterclaim, and dismissing defendant's counterclaim without prejudice, should be reversed on the law, without costs or disbursements, the motion for summary judgment denied and defendant's counterclaim reinstated.

SULLIVAN, J. P., ROSS, CARRO, FEIN and LYNCH, JJ., concur.

Order and judgment, Supreme Court, New York County, both entered on June 2, 1982, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, the motion for summary judgment denied and defendant's counterclaim reinstated.