■ U.S. PRINTNET, INC. et al., Appellants, v CHEMUNG CANAL TRUST COMPANY et al., Respondents. [703 NYS2d 821] —Graffeo, J. Appeal from an order of the Supreme Court (Ellison, J.), entered November 13, 1998 in Chemung County, which, *inter alia*, granted defendants' motion for partial summary judgment dismissing the third cause of action in the complaint.

The Attorney General commenced an action in Federal District Court on behalf of the People of the State of New York against Financial Services Network, USA (hereinafter FSN) and brothers Paul Navestad and Eric Navestad alleging violations of the Federal Telemarketing and Consumer Fraud and Abuse Prevention Act (15 USC § 6101 *et seq.*). In connection with this lawsuit, a temporary restraining order (hereinafter TRO) was granted on June 7, 1996, effective June 12, 1996, freezing the assets of FSN, Paul Navestad and Eric Navestad and precluding the withdrawal or transfer of any assets under their control. Paul Navestad, Eric Navestad and their brother, plaintiff Gary Navestad, served as the corporate officers of Navestar D.M., Inc. (hereinafter Navestar) and Gary Navestad and Eric Navestad owned 60% of its stock. On June 11, 1996, Paul Navestad and Gary Navestad went to a branch office of defendant Chemung Canal Trust Company (hereinafter Chemung) to withdraw the sum of $300,000 from Navestar's corporate checking account. They were issued a cashier's check made payable, pursuant to Gary Navestad's directions, to plaintiff U.S. Printnet, Inc. (hereinafter Printnet), a company owned by Gary Navestad. The check was deposited into Printnet's account at Oakbrook Bank in Illinois on June 12, 1996.

However, Chemung subsequently refused to honor the check upon the instructions of its senior vice-president in charge of operations, Thomas Karski. On June 12, 1996, Karski had

learned of the Attorney General's action and sought to determine whether any funds subject to the TRO were on deposit with Chemung. He was advised that the day before, Chemung had issued to Gary Navestad a $300,000 cashier's check drawn on the Navestar account. Pursuant to a Navestar corporate resolution, any draft in an amount in excess of $5,000 had to bear the signatures of both Gary Navestad and Paul Navestad. He further noted that every check that had been deposited in Navestar's account had originally been made payable to FSN. Karski consulted with Chemung's legal counsel and thereafter concluded that it was likely that the funds conveyed by the $300,000 cashier's check were subject to the TRO. Accordingly, he directed that the Navestar account be frozen and placed a stop payment order on the $300,000 cashier's check, advising Gary Navestad of these actions.

Additionally, Karski telephoned George Clam, a senior executive vice-president at Oakbrook Bank, and informed him that the payment had been stopped because the funds might have been subject to a TRO in a pending Federal action. With this information, Oakbrook Bank voided the $300,000 credit to Printnet's account and returned the $300,000 check to Chemung, which was then deposited into Navestar's account.

Plaintiffs thereafter commenced this action alleging that Chemung improperly dishonored the cashier's check, illegally converted assets, engaged in a deceptive act under General Business Law § 349 (a), and that Karski had defamed Gary Navestad in the course of his telephone conversation with Clam. Defendants moved for partial summary judgment dismissing plaintiffs' cause of action sounding in defamation and plaintiffs cross-moved for summary judgment on all four causes of action. Supreme Court granted defendants' motion and denied plaintiffs' cross motion. Plaintiffs now appeal and we affirm.

Plaintiffs' defamation cause of action is premised on the telephone conversation between the two bank officials and alleges that Karski told Clam that the check would not be honored because it was issued "fraudulently". In support of their motion for summary judgment seeking dismissal of this cause of action, defendants submitted the deposition testimony of Karski in which he claimed that he did not refer to any fraudulent actions by plaintiffs, but stated that the bank was dishonoring the check because the funds might have been subject to a court order freezing the assets. Clam's deposition testimony indicated that he did not recall Karski making any statement with respect to fraudulent activity. Based on the

foregoing, defendants satisfied their prima facie burden of demonstrating entitlement to summary judgment and, therefore, the burden shifted to plaintiffs to produce admissible evidence raising an issue of fact (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Zuckerman v City of New York*, 49 NY2d 557, 562).

We find, based on our review of the record, that plaintiffs did not present sufficient evidence to establish a question of fact with respect to the allegedly defamatory statement. Plaintiffs submitted no proof contradicting the testimony of Karski or Clam, and the Navestads acknowledged that they did not have direct knowledge of the content of the conversation. The affidavit of plaintiffs' counsel suggesting that Karksi had implied fraudulent conduct on behalf of Gary Navestad is conclusory and speculative and is insufficient to defeat defendant's motion.

We further reject plaintiffs' contention that they are entitled to summary judgment on the remaining three causes of action. Although a bank must honor its cashier's check upon presentment (*see, Banco Di Roma v Merchants Bank*, 92 AD2d 42, 43; *see also*, UCC 3-410 [1]) and it is not subject to a stop payment order when properly issued (*see, Kaufman v Chase Manhattan Bank*, 370 F Supp 276, 278), an exception exists where the check was procured by fraud (*see, Turbine Fed. Credit Union v Amsterdam Fed. Sav. & Loan Assn.*, 224 AD2d 753, 754; *Banco Di Roma v Merchants Bank, supra*, at 44). Here, defendants interposed the defenses that not only was the check drawn on funds subject to the TRO but that plaintiffs fraudulently induced issuance of the cashier's check. The check was drawn on the funds of Navestar, a corporation possibly subject to the TRO, and made payable to Printnet, a company owned by Gary Navestad. Notably, any draft made on Navestar's account required the signatures of both Gary Navestad and Paul Navestad but the draft in question was only endorsed by Gary Navestad. Under these circumstances, we conclude that a question of fact exists with respect to whether defendants have a valid defense and whether Printnet was a holder in due course (*see, Turbine Fed. Credit Union v Amsterdam Fed. Sav. & Loan Assn., supra*, at 754; *see also*, UCC 3-306 [b]; *compare, Banco Di Roma v Merchants Bank*, 251 AD2d 139, *lv denied* 92 NY2d 808). Upon review of the entire record, we find that material issues of fact relevant to the causes of action remain regarding whether the $300,000 was subject to the TRO, whether issuance of the stop payment order was justified and whether the corporate entities of FSN, Navestar and Printnet, along with the Navestad brothers, had common or overlapping business

interests. Hence, Supreme Court's denial of plaintiffs' cross motion for summary judgment was proper.

Mercure, J. P., Peters and Spain, JJ., concur; Crew III, J., not taking part. Ordered that the order is affirmed, with costs.