[773 NYS2d 434]

Benito Dalessio, Appellant, v Linda Kressler, Doing Business as Madam Linda, Defendant, and Republic National Bank of New York, Respondent.

Second Department, March 8, 2004

**APPEARANCES OF COUNSEL**

*Richard S. Bonfiglio*, Brooklyn, for appellant.

*Conrad D. Singer*, Great Neck (*Paula Schwartz Frome* of counsel), for respondent.

**OPINION OF THE COURT**

GOLDSTEIN, J.P.

The two issues presented in this case are whether the plaintiff is entitled to any relief against Republic National Bank of New York (hereinafter Republic) based upon the undisputed facts of this case and whether UCC 4-303 authorizes a payor bank to defy a court order with impunity. We find that the plaintiff is not entitled to relief against Republic. However, we reject Republic's contention that a restraining order dated November 12, 1998, of the Supreme Court, Kings County, in this action was not effective and could be ignored.

The plaintiff's contentions are, for the most part, undisputed by Republic. In May 1998, the plaintiff's girlfriend Jennifer

Lopez introduced the plaintiff to the defendant Linda Kressler, doing business as Madam Linda, a spiritual advisor. Kressler allegedly told the plaintiff that his girlfriend had certain debts which had to be paid before he could marry her.

On Monday, November 9, 1998, the plaintiff drew a check payable to Kressler for $107,000, had the check certified by Republic, and gave the certified check to Kressler.

On Tuesday, November 10, 1998, the plaintiff himself appeared at Republic to cash a $15,000 check. Since the plaintiff appeared nervous when he approached the teller, she referred the matter to the branch manager. The plaintiff revealed to the branch manager that Kressler and his girlfriend had both visited him in his home, knew his entire financial situation and represented to him that the girlfriend would only be free to marry him if he paid her the funds requested. The branch manager notified the plaintiff's sister and co-owner of the account and after consulting with senior management, advised her to retain an attorney to obtain a court order to stop payment on the certified check for $107,000.

Wednesday, November 11, 1998, was Veteran's Day. Both Republic and the courts were closed. On that day, the plaintiff retained an attorney who drafted a summons and complaint naming both Kressler and Republic as defendants. The complaint was verified on November 11, 1998. It charged Kressler with fraud and stated that Republic was named as a defendant "for the purpose of making said Defendant subject to the Order of this Court directing the disposition of the funds hereinbefore described as having been certified by said Defendant on or about November 9, 1998."

On Thursday, November 12, 1998, the summons and complaint were filed and Justice Irving S. Aronin signed a temporary restraining order directing that "Defendant, REPUBLIC NATIONAL BANK OF NEW YORK be and hereby is restrained and enjoined from transferring paying or otherwise disposing of funds in the sum of $107,000.00 heretofore certified from" the plaintiff's account pending hearing and determination of the plaintiff's application for further injunctive relief.

The temporary restraining order provided that "personal service" upon Republic shall "be deemed good and sufficient notice of the restraints imposed herein." Republic's Assistant Treasurer was personally served on November 13, 1998, at 11:30 A.M. The certified check was presented for payment at some time on November 13, 1998, and paid. However, there is no evi-

dence as to when on November 13, 1998, the check was paid. Nor is there any evidence in the record as to whether payment was made directly to Kressler or to another bank as holder in due course.

On November 16, 1998, the return date of the motion for a preliminary injunction, neither Kressler nor Republic appeared. By order dated November 16, 1998, the temporary restraining order was continued until further order of the court.

Both Kressler and Republic defaulted in appearing in the action and the plaintiff moved for an inquest. In response, both defendants cross-moved to vacate their default. By order dated February 2, 2000, the Supreme Court (G. Aronin, J.), granted the cross motion, deemed the defendants' answers served, and directed the defendants to pay costs.

Thereafter, Republic moved to dismiss the complaint insofar as asserted against it for failure to state a cause of action or, in the alternative, for summary judgment. Republic argued that "[u]nder UCC 4-303, a bank must honor payment on a certified check regardless of a subsequently received stop payment order."

The plaintiff, in opposition, argued that he had complied with Republic's internal rules with respect to stop orders on certified checks. He cited UCC 3-603 which states in pertinent part the bank's liability is discharged once payment is made "even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction *by order of a court of competent jurisdiction*" (emphasis supplied).

The Supreme Court, by order dated July 16, 2002, denied Republic's motion. Relying upon UCC 3-603, the Supreme Court found presentment of a stop-payment order was not sufficient to stop payment of a certified check, but presentment of a court order was sufficient. Since Republic did not reveal the time when the check was presented for payment on November 13, 1998, the Supreme Court found that "there exists a triable issue of fact as to whether Republic was personally served with the temporary restraining order prior to the payment of the check."

Thereafter, Republic moved for leave to reargue, contending that, assuming arguendo, that the court order restraining pay-

ment of the certified check was "properly and timely served upon Republic," Republic was still entitled to judgment as a matter of law on the ground that, pursuant to UCC 4-303, payment on a certified check cannot be stopped even by order of a court of competent jurisdiction.

In the order appealed from the Supreme Court granted leave to reargue and upon reargument granted Republic's motion to dismiss the complaint insofar as asserted against it on the ground that UCC 4-102 provides that in the event of a conflict between provisions of UCC article 3 and UCC article 4, the provisions of UCC article 4 take precedence (*see First Commercial Bank v Gotham Originals*, 64 NY2d 287 [1985]).

The plaintiff does not dispute that he knowingly executed a certified check payable to Kressler. Accordingly, the nature of Kressler's alleged fraud is fraud in the inducement, not fraud in the factum (*see First Natl. Bank of Odessa v Fazzari*, 10 NY2d 394, 397 [1961]; *Mechwart v Mechwart*, 292 AD2d 354 [2002]; *Mix v Neff*, 99 AD2d 180, 182-183 [1984]; *Federal Deposit Ins. Corp. v Kassel*, 72 AD2d 787, 788 [1979]).

In the case of fraud in the factum, the maker is induced to sign something entirely different than what he thought he was signing (*see First Natl. Bank of Odessa v Fazzari, supra* at 397). The instrument is "void ab initio" (*Mix v Neff, supra* at 182). However, fraud in the inducement renders the obligation voidable based upon facts occurring prior or subsequent to its execution (*see Mix v Neff, supra* at 183).

The elements of a cause of action sounding in fraudulent inducement are "representation of a material existing fact, falsity, *scienter*, deception and injury" (*Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407 [1958]). The plaintiff's entitlement to a preliminary injunction was dependent upon his establishing a likelihood of success on the merits (*see Chrys v D.C.G. Dev. Co.*, 187 AD2d 923, 924 [1992]).

The plaintiff claims that he executed the certified check and gave it to Kressler based upon a promise that if he made those payments his girlfriend Jennifer Lopez would marry him. There are a number of difficulties with the plaintiff's cause of action. It is unclear as to whether the plaintiff is claiming that Kressler falsely represented that she was acting on behalf of Jennifer Lopez or whether Kressler, acting in concert with Lopez, falsely represented that Lopez would marry the plaintiff if he paid $107,000.

If the alleged misrepresentation was a promise to marry there are additional difficulties. Essential to a cause of action sounding in fraudulent inducement based upon a false promise is that the defendant had no intention to perform the promise at the time it was made (*see Deerfield Communications Corp. v Chesebrough-Ponds, Inc.,* 68 NY2d 954, 956 [1986]; *Channel Master Corp. v Aluminium Ltd. Sales, supra; Nastro Contr. v Agusta,* 217 AD2d 874 [1995]). Assuming arguendo that there was an intent to perform, any promise to marry would be legally unenforceable (*see* Civil Rights Law § 80-a).

■ The plaintiff's assertions in support of his cause of action were insufficient to establish his likelihood of success on the merits (*see Chrys v D.C.G. Dev. Co., supra*). Accordingly, it is apparent that he never should have been afforded injunctive relief against Republic. If Republic had sought vacatur of the injunction against it, its application should have been granted.

However, Republic never sought vacatur of the injunction against it, defaulted in appearing in the action, and only sought to vacate its default after the plaintiff moved for an inquest with respect to damages. Republic now contends that the court order was "ineffective" since "the check in question could not be stopped once it was certified." However, Republic also acknowledges that its rules allow "a stop payment on the certified" check under certain circumstances which Republic contends are not present here. The inference to be drawn from Republic's contentions is that a payor bank has the authority to determine if and when payment of a certified check should be stopped, but a court of competent jurisdiction lacks such authority.

A certified check, as in the case of a cashier's check, is the primary obligation of the bank once it is certified (*see* UCC 4-303 [1]). However, exceptions to the general rule that the bank must honor the check upon presentment have been recognized (*see U.S. Printnet v Chemung Canal Trust Co.,* 270 AD2d 544 [2000]; *Turbine Fed. Credit Union v Amsterdam Fed. Sav. & Loan Assn.,* 224 AD2d 753, 754 [1996]; *Banco Di Roma v Merchants Bank of N.Y.,* 92 AD2d 42 [1983]; *Hotel Riviera, Inc. v First Natl. Bank & Trust Co. of Oklahoma City, Okla.,* 768 F2d 1201 [1985]; *TPO Inc. v Federal Deposit Ins. Corp.,* 487 F2d 131 [1973]).

UCC 4-303 (1) (a), relied upon by Republic, states in pertinent part that "[a]ny knowledge, notice or stop-order received by, legal process served upon or setoff exercised by a payor bank,

whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item . . . comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served . . . after the bank has . . . accepted or certified the item.''

The events described in UCC 4-303, which include (1) knowledge or notice of the customer's death, incompetency, or bankruptcy, (2) the customer's stop-payment order, (3) ''legal process,'' and (4) setoff by the payor bank, are known as the ''four legals'' (2 White and Summers, Uniform Commercial Code § 21-7, at 401 [Practitioner's 4th ed]). The general rule is ''first in time, first in right. If the legal arrives at the payor bank *after* the bank has'' certified the check ''then the legal cannot interfere with payment of that check'' (*id.* at 402).

The law is well settled that once the check is certified the customer may not unilaterally stop payment by what is commonly referred to as a ''stop-payment order'' (*see Quistgaard v EAB Eur. Am. Bank & Trust Co.,* 182 AD2d 510 [1992]; *Abilities Inc. v Citibank,* 87 AD2d 831 [1982]; *Dziurak v Chase Manhattan Bank,* 58 AD2d 103 [1977], *affd* 44 NY2d 776 [1978]; UCC 4-403 [1]). This is merely a unilateral direction by the customer not to pay the check. It cannot be equated with a court order.

The legislative history of UCC 4-303 in New York indicates that ''legal process'' referred to ''garnishment, levy of attachment, levy of execution, and supplementary proceedings'' to secure payment of debts (1955 Report of NY Law Rev Commn, at 1466; *see* 1956 Report of NY Law Rev Commn, at 429). The Law Revision Commission specified the provisions of the Civil Practice Act applicable to ''legal process,'' to wit, Civil Practice Act § 679 (2) relating to levy of execution upon personal property of judgment debtor, Civil Practice Act § 684, relating to levy or garnishment upon earnings or income of judgment debtor, Civil Practice Act § 794, relating to an order in a special proceeding directing a person indebted to the judgment debtor to pay a sum of money to the sheriff, and Civil Practice Act § 917, relating to warrants of attachment. Orders of attachment which are served after an item is accepted or certified clearly ''comes too late'' since there is ''nothing to attach at the time of service of the attachment order'' (*Matter of Supreme Mdse. Co. v Chemical Bank,* 70 NY2d 344, 348 [1987]). It is clear that at the time UCC 4-303 was enacted, it was not intended to apply

to an order of a court of competent jurisdiction enjoining payment.

More recently court orders have been equated with "legal process." For example, UCC 8-115 (L 1997, ch 566) provides that a securities intermediary who transfers securities at the direction of the principal is not liable to a person having an adverse claim unless served "with an injunction, restraining order, or other legal process enjoining it from doing so, issued by a court of competent jurisdiction." In this section, an injunction or court order is considered a category of "legal process."

However, the cases which equate a court order granting injunctive relief with legal process do not stand for the proposition that a court order may be ignored (*see First Commercial Bank v Gotham Originals, supra; All Serv. Exportacao, Importacao Comercio, S.A. v Banco Bamerindus Do Brazil, S.A., N.Y. Branch,* 921 F2d 32 [1990]). Those cases deal with the question of whether injunctive relief should have been granted in the first instance and the corrective action taken on the appeal includes vacatur of the court order granting injunctive relief. In *First Commercial Bank v Gotham Originals (supra* at 297), the Court of Appeals held that "it was improper for the lower court to restrain the issuing bank from paying cashier's checks it had previously issued to the beneficiary following presentment of a draft and necessary documents under a letter of credit" citing *Key Intl. Mfg. v Stillman* (103 AD2d 475 [1984], *mod* 66 NY2d 924 [1985]).

In *Key Intl. Mfg. v Stillman (supra* at 479), this Court held that injunctive relief was improperly granted and "we cannot perceive why the bank has failed to object to the imposition of restraint." The question of whether the bank could have or should have defied the restraint was not considered. On appeal to the Court of Appeals, the determination of this Court was modified, to dismiss the payee's claim against the bank for damages in excess of the "actual amounts due under the letters of credit plus interest" on the ground that "[t]o hold the bank liable for such sum as a result of compliance with a judicial restraining order would be to place it on the horns of an unacceptable dilemma" (*Key Intl. Mfg. v Stillman,* 66 NY2d 924, 926-927 [1985]).

UCC 4-303 does not authorize a payor bank to simply ignore an order of a court of competent jurisdiction enjoining payment. The payor bank should seek vacatur of the court order and may in the appropriate case seek interpleader remedies (*see Greenberg v World Exch. Bank,* 227 App Div 413 [1929]).

In the instant case, Republic should have responded to the plaintiff's complaint against it in a timely fashion and should have sought vacatur of the injunction against it.

As noted by the Supreme Court, there is a factual issue in the record as to whether Republic was afforded a reasonable time to comply with the order dated November 12, 1998: the order was personally served on the morning of November 13, 1998, and the check was paid sometime that day but there is no evidence in the record as to what time on November 13, 1998, the check was paid.

If this factual issue is ultimately resolved against Republic the plaintiff still would not be entitled to damages against Republic. Since Republic was a defendant in this action solely "for the purpose of making said Defendant subject to the Order of this Court" which on these facts should never have been issued, the plaintiff's complaint was properly dismissed insofar as it is asserted against Republic.

However, if the facts indicate that Republic was served with the order dated November 12, 1998, before it made payment, was afforded a reasonable time to comply, and nevertheless disobeyed the lawful mandate of the court, it may be held in contempt of court. A court of record has the power to punish a party for disobedience of a lawful mandate of the court (*see* Judiciary Law § 750 [A] [3]; § 753 [A] [3]). The "lawful mandate of the court" constitutes an order of a court of competent jurisdiction which is not void on its face (*see Ketchum v Edwards,* 153 NY 534, 538 [1897]; *Matter of Saffra v Rockwood Park Jewish Ctr.,* 249 AD2d 480 [1998]).

Civil contempt (*see* Judiciary Law § 753) "has as its aim the vindication of a private party to litigation" and includes as its elements knowledge of the order and prejudice to the rights of a party to the litigation (*McCain v Dinkins,* 84 NY2d 216, 226 [1994]). Under the circumstances of this case, the plaintiff cannot be said to have suffered prejudice to his rights (*see Altbach v Kulon,* 302 AD2d 655 [2003]; *Matter of Council 82, AFSCME, AFL-CIO [Campbell],* 268 AD2d 859 [2000]; *cf. Matter of McCormick v Axelrod,* 59 NY2d 574, 587 [1983]).

The purpose of criminal contempt (*see* Judiciary Law § 750) is to vindicate the authority of the court (*see Ketchum v Edwards, supra; State of New York v Congress of Racial Equity [C.O.R.E.],* 92 AD2d 815 [1983]). No showing of prejudice to the rights of a party to the litigation is needed "since the right of the private parties to the litigation is not the controlling factor" (*see Matter*

*of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y.,* 70 NY2d 233, 240 [1987]).

An essential element of criminal contempt is willful disobedience (*see* Judiciary Law § 750 [3]; *Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y., supra* at 240). Knowingly failing to comply with a court order gives rise to an inference of willfulness which may be rebutted with evidence of good cause for noncompliance (*see Ferraro v Ferraro,* 272 AD2d 510, 512 [2000]). However, if the facts indicate that Republic was in fact served with the order dated November 12, 1998, before making payment, was afforded a reasonable time to comply, and willfully disobeyed the order, it is guilty of criminal contempt.

The order appealed from dismissing the complaint insofar as asserted against Republic should be affirmed. However, Republic's position that it could defy a court order with impunity cannot be countenanced. Accordingly, we remit the matter of the Supreme Court, Kings County, for a hearing and determination as to whether Republic was served with the order dated November 12, 1998, before making payment, and if so, whether a proceeding should be commenced against it adjudicating it in criminal contempt.

ADAMS, TOWNES and MASTRO, JJ., concur.

Ordered that the order dated December 9, 2002, is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for a hearing and determination as to whether Republic was served with the order dated November 12, 1998, before making payment, and if so, whether a proceeding should be commenced against it adjudicating it in criminal contempt.