OPINION OF THE COURT
H. Patrick Leis, III, J.
In this contentious Mental Hygiene Law article 81 proceeding, one of Edythe Chiaro’s four sons, Dennis Chiaro, has moved for an order punishing David Chiaro and William Chiaro[1] for contempt;[2] compelling David Chiaro and William Chiaro to ac *692 count as cotrustees of the Chiaro Family Revocable Trust and as attorneys-in-fact for Edythe Chiaro; compelling David Chiaro to amend the Chiaro Family Revocable Trust to include Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro as equal remainder beneficiaries; cancelling and declaring the May 16 and May 24, 2007 amendments to the subject trust null and void; and directing David Chiaro and William Chiaro to pay all expenses and legal fees incurred in this motion.
David Chiaro has cross-moved for an order “vacating that portion of the Stipulation of Settlement, dated August 18, 2008, and the Court’s Judgment and Order implementing its terms, dated October 31, 2008, providing for amendments of the dis-positive provisions of the Chiaro Family Revocable Trust, dated January 28, 2000, as amended.”
A hearing was held on March 8, 2010. Subsequently, the court received a letter dated March 11, 2010 from Jaclene D’Agostino of Farrell Fritz, EC., counsel for David Chiaro, and accompanying documents reflecting that David Chiaro, “as Property Management Guardian of EDYTHE CHIARO has amended the Chiaro Family Trust.”
Although it is concluded, as discussed below, that David Chiaro cannot be held in contempt, the court does not adopt the apparent contention of counsel for David Chiaro that it is his purported amendment of the trust that has relieved him of a finding of contempt.
Background
Although there are many contested issues in this Mental Hygiene Law article 81 proceeding, central to the current application is the Chiaro Family Revocable Trust. Edythe Chiaro and her husband, Ralph Chiaro, were the grantors and original trustees of the trust. A number of amendments were made to the original trust which was executed on January 28, 2000. It was fully amended and restated on November 1, 2002, and there were subsequent amendments.
Acting together on January 9, 2007, Edythe and Ralph amended the trust directing, inter alia, that each of their four sons was to be a 25% remainderman. Thereafter, two physicians treating Edythe Chiaro for Alzheimer’s disease, by separate let *693 ters dated May 10, 2007 and May 15, 2007, stated that Edythe Chiaro lacked the ability to make informed decisions in reference to the management of financial affairs. Ralph Chiaro, pursuant to the terms of the trust (article VII [I]) (discussed in greater detail below) then, acting unilaterally as the remaining, nonincapacitated grantor, amended the trust on May 16, 2007, and then again on May 24, 2007. The May 16, 2007 amendment, inter alia, removed a definition of Edythe and Ralph’s children that had excluded David Chiaro. The May 24, 2007 amendment, among other changes, left only William Chiaro and David Chiaro as remaindermen, each with a 50% interest. Ralph Chiaro died on July 20, 2007.
The rights of each of the four sons, as remaindermen of the trust, was a matter on which the parties focused in reaching a compromise of the many contested questions in this Mental Hygiene Law article 81 proceeding.
In the proceedings held on the record before Justice Sandra L. Sgroi on August 18, 2008, the parties set forth the terms of their stipulation resolving the disputed issues in this Mental Hygiene Law article 81 proceeding. Among those, recited at pages 6-7 of the minutes, was the following: “the Chiaro family revocable trust shall be amended to include all four brothers as equal twenty-five percent beneficiaries.” Pursuant to the stipulated terms, the amendment, which was to be prepared by Lynn Poster-Zimmerman, Esq., then counsel for David Chiaro and William Chiaro, was to be signed by September 5, 2008.
After each of Edythe Chiaro’s four sons were sworn in, Justice Sgroi specifically asked if they had heard the terms of the stipulation, and whether they all understood and agreed to the stipulation. All four sons responded affirmatively to these questions. Moreover, each son was given the opportunity to ask questions, with each declining to do so. All four agreed to be bound by the terms of the stipulation, and acknowledged that they believed that entering into the stipulation was in the best interests of their mother. Justice Sgroi asked if they had any questions about their responsibilities, and each indicated they had none.
In addition to relying on the stipulation as a basis for amending the trust, Justice Sgroi treated the matter of changing the trust beneficiaries as a disposition of Edythe Chiaro’s assets to or for the benefit of another person which was to be considered against the standards set forth in Mental Hygiene Law § 81.21. Specific findings under subdivision (e) of that section must be made before such a disposition of assets may be approved. Upon *694 making the findings required by the statute, Justice Sgroi stated: “I will approve the transfer of assets to reform the trust and divide it equally among the brothers” (Aug. 18, 2008 minutes, at 49).
A judgment and order appointing guardian dated October 31, 2008 was thereafter issued. A decretal paragraph at page 9 of the judgment and order directed:
“that the Co-Property Management Guardians shall have the power to execute and shall execute an amendment to the Chiaro Family Revocable Trust, to the extent that it involves transfers of EDYTHE CHIARO’s property to or for the benefit of another person pursuant to Section 81.21 (e) of the Mental Hygiene Law and naming all four sons as equal beneficiaries of the Chiaro Family Revocable Trust on or before December 1, 2008,[3] the Court having made a finding that EDYTHE CHIARO lacks the requisite mental capacity to perform the act or acts for which approval is sought and is not likely to regain such capacity within a reasonable period of time; that a competent, reasonable individual in her position would be likely to perform the act or acts under the same circumstances; and the incapacitated person has not manifested an intention [in] consistent[4] with the performance of the act or acts for which approval has been sought at an earlier time when she had the requisite capacity.”
Analysis and Conclusions
Contempt
After a review of so much of the record of the prior proceedings as focused on David Chiaro’s obligation to amend the subject trust, it is manifest that no reasonable argument could be made that there was anything other than a clear mandate that David Chiaro, as property management guardian *695 of Edythe Chiaro, was required to amend the subject trust. Based on David Chiaro’s failure to comply with the clear mandate to amend the trust, Dennis Chiaro has moved to hold him in civil contempt.[5]
Judiciary Law § 753 provides, in part:
“A. A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:
“3. A party to the action or special proceeding . . . for any other disobedience to a lawful mandate of the court.”
*696 The Court of Appeals summarized the principles governing civil contempt applications in McCain v Dinkins (84 NY2d 216, 226 [1994]), stating:
“Civil contempt has as its aim the vindication of a private party to litigation and any sanction imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with the benefits of the mandate . . .
“To sustain a civil contempt, a lawful judicial order expressing an unequivocal mandate must have been in effect and disobeyed. Moreover, the party to be held in contempt must have had knowledge of the order, although it is not necessary that the order actually have been served upon the party. In addition, prejudice to the rights of a party to the litigation must be demonstrated.” (Citations omitted.)
It is undisputed that David Chiaro knew of the court’s judgment and order directing that he, as property management guardian for Edythe Chiaro, execute an amendment of the trust by a date certain. It is further undisputed that he did not comply with the judgment and order of the court until after the conclusion of the hearing held pursuant to the application by Dennis Chiaro to punish David Chiaro for contempt. David Chiaro’s delayed compliance does not render the contempt proceeding academic since he had already willfully failed to obey the lawful mandate of the court (see Matter of Carol S. [Christine T.— Mary AA.], 68 AD3d 1337 [3d Dept 2009]; Ferraro v Ferraro, 272 AD2d 510 [2000]). Nor is it a defense that David Chiaro may have relied on the advice of counsel in resisting his obligations (see People v Marcus, 261 NY 268 [1933]; People v Dercole, 72 AD2d 318 [2d Dept 1980]).
Nevertheless, the foregoing determinations are not sufficient to support a finding of civil contempt since, as indicated below, David Chiaro never effectively had the power to amend the trust.
Amendment of the Trust
Pursuant to the trust (page 2 of the November 1, 2002 amended and restated trust, and article VII [I] thereof), once Edythe Chiaro was determined to be incapacitated and a guardian was appointed for her, she could no longer serve as a trustee, and the only reasonable construction of the trust is that she *697 could not exercise a power to amend the trust as a grantor.[6] article VII (I) of the trust provides:
“All rights granted to any person by any provision of this trust, may be exercised by such person at any time during his or her lifetime and capacity, unless otherwise specifically provided herein; and for all purposes of this trust, incapacity shall be deemed to include not only persons who have been so declared by a Court of competent jurisdiction but also persons for whom a Guardian or conservator or other fiduciary of the person or estate shall have been appointed by a Court of competent jurisdiction or whom two licensed mental health professionals, shall certify in writing, to be unable to handle to [sic] make informed decisions regarding management of his or her financial affairs.” (Emphasis added.)
article V (A) of the trust states, in part:
“This trust may not be amended during the lifetime of both Grantors without the written agreement of both Grantors, unless one of the Grantors is incapacitated or incompetent, in which case the other Grantor shall have the right to modify this trust . . . From and after the death of the first Grantor, the surviving Grantor shall have the power to alter, amend, or revoke Trust ‘A’ in whole or in part, but Trust ‘B’ may not be altered, amended or revoked by any person. From and after the death of the surviving Grantor, Trust ‘A’ may not be altered, amended or revoked by any person.”[7]
Thus, article VII (I) places a gloss on article V (A). Whatever rights Edythe Chiaro as the surviving grantor may have *698 under article V (A) to amend the trust are obviated by the loss of her capacity under the terms of article VII (I).
To conclude that David Chiaro could effectively amend the trust as the property management guardian for Edythe Chiaro is to conclude that Edythe Chiaro was imbued with a power or authority to act, and that such power or authority was to be exercised on her behalf by her guardian. However, pursuant to the trust provisions, Edythe Chiaro had no power to amend the trust once she became incapacitated. Appointment of the guardian did not restore her power or authority to act in contravention of the governing terms of the trust. “The scope of the authority to revoke or amend a trust is . . . defined by the terms of the trust indenture and New York law . . . Compliance with the method set forth in the trust instrument for amendment is required for an amendment to be effective” (Matter of Goetz, 8 Misc 3d 200, 203-205 [Sur Ct, Westchester County 2005]). Accordingly, the execution of an amendment of the trust by David Chiaro as property management guardian for Edythe Chiaro does not effectively amend the trust (see generally Gaigal v Laub, 236 AD2d 362 [2d Dept 1997], Iv denied 90 NY2d 802 [1997] [trust that was revocable and amendable by husband and wife creators became irrevocable upon death of one spouse and the purported revocation of the trust by the surviving spouse was of no effect]). The situation in Matter of Elsie B. (265 AD2d 146 [3d Dept 2000]) is distinguishable from the current circumstance inasmuch as there is no indication that the trust in that case expressly terminated the settlor’s rights to act once she was found to be incapacitated, and thus the guardian was not exercising a power that was beyond the power of the incapacitated person to exercise.[8]
With respect to the contempt proceedings, notwithstanding that compliance with the mandate in the judgment and order would not have been effective to accomplish the intended result of effectively amending the trust, David Chiaro was not relieved of his obligation to comply with the court’s directive (see Dalessio v Kressler, 6 AD3d 57 [2d Dept 2004]). An order of a court of competent jurisdiction which is not void on its face constitutes *699 the “lawful mandate of the Court” (see Dalessio v Kressler, supra). But, in addition to proving a willful failure to obey the lawful mandate of the court, in order to prevail on a civil contempt motion, the movant must also show that alleged contemnor’s conduct was calculated to, and did defeat, impair, impede or prejudice the rights or remedies of the movant (see e.g. Orange County-Poughkeepsie Ltd. Partnership v Bonte, 37 AD3d 684 [2d Dept 2007]; Barinka v Barinka, 301 AD2d 487 [2d Dept 2003]). Here, the court is constrained to conclude that the movant has failed to sustain his burden in this regard because in these circumstances, in which compliance with the mandate does not effectively serve to amend the trust, the willful disregard of the mandate did not defeat, impair, impede or prejudice a right of the movant (see Dalessio v Kressler, supra; Altbach v Kulon, 302 AD2d 655 [3d Dept 2003]).
It should be noted that, although in issuing the October 31, 2008 judgment and order, Justice Sgroi was acting as a court of jurisdiction coordinate with that of the undersigned, on this motion to punish for civil contempt it is appropriate for this court to examine the validity of the mandate in the judgment and order, at least to the extent of determining whether its violation would defeat, impair, impede or prejudice a right of the movant (see Mount Sinai Hosp. v Davis, 8 AD2d 361 [1st Dept 1959]; Koenig v Eagle Waist Co., Inc., 176 App Div 724 [1st Dept 1917]; see also Dalessio v Kressler, supra).
While David Chiaro could have been held responsible to pay expenses and legal fees as sought by the movant had he been found to be in contempt (see Children’s Vil. v Greenburgh Eleven Teachers’ Union Fedn. of Teachers, Local 1532, AFT, AFL-CIO, 249 AD2d 435 [2d Dept 1998]; Data-Track Account Servs. v Lee, 291 AD2d 827 [4th Dept 2002]; Matter of Glazer, 168 AD2d 975 [4th Dept 1990]), the determination that he cannot be adjudicated to be in contempt also requires denial of the request to recover expenses and legal fees.
Notwithstanding these conclusions, the movant is not without some redress.
A remedy that is not available, however, is amendment of the trust pursuant to EPTL 7-1.9. As noted in Rosner v Caplow (90 AD2d 44, 49 [1st Dept 1982], affd 60 NY2d 880 [1983]), “EPTL 7-1.9, has been construed to require the consent of all the creators or settlors” (citing, inter alia, Culver v Title Guar. & Trust Co., 296 NY 74, 77-78 [1946]). Thus, inasmuch as Ralph Chiaro has died, EPTL 7-1.9 cannot he employed to amend the *700 trust, even if it is assumed that a Mental Hygiene Law article 81 guardian could be empowered to act for Edythe Chiaro under that provision (see Rosner v Caplow, supra).
Construction of the Terms of the Parties’ Stipulation
[2] In the circumstances of this case, the inability to compel amendment of the trust need not preclude mandating the equal distribution of the remainder of the trust assets to each of the sons. Certainly it is true that the stipulation spread on the record on August 18, 2008 reflected an agreement that the Chiaro Family Revocable Trust would be amended to include all four brothers as equal 25% remaindermen. Amendment of the trust, however, was not, per se, the essence or goal of the stipulation. Rather, the purpose was to insure that each of the four sons received a 25% interest in the remainder of the trust.
“ ‘An oral stipulation of settlement that is made in open court ... is enforceable as a contract and is governed by general contract principles for its interpretation and effect[; t]he role of the Court is to determine the intent and purpose of the stipulation based on an examination of the record as a whole’ ” (Koppie v Koppie, 62 AD3d 666, 667 [2d Dept 2009]; accord Lacorazza v Lacorazza, 47 AD3d 897 [2d Dept 2008]; Matter of Weiss v Weiss, 289 AD2d 498 [2d Dept 2001]; Lynch v Lynch, 178 Misc 2d 1066 [Sup Ct, Rockland County 1998]).
The court has the responsibility of effectuating the true intent of the parties as opposed to giving weight to provisions of the agreement which may not have been material (Furgang v Epstein, 106 AD2d 609 [2d Dept 1984]). Certain contract principles that warrant assuring that the intended agreement achieves its purpose are stated in Atwater & Co. v Panama R.R. Co. (246 NY 519, 524 [1927]), in which the Court said:
“ ‘Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish’. The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not *701 prevail over substance and a sensible meaning of words should be sought.’ ’ (Citation omitted.)
“In fact it is the substance of an agreement rather than its form, that is, the spirit rather than the letter, which must control its interpretation” (22 NY Jur 2d, Contracts § 208). “While courts ‘neither make nor modify contracts nor dispense with their performance’, it is no longer true that the scope of an undertaking is necessarily to be fixed in absolute accordance with the literal meaning of the language used” (Matter of People [Bond & Mtge. Guar. Co.], 267 NY 419, 425 [1935] [citation omitted]).
The Court of Appeals applied such rules of construction in Sutton v East Riv. Sav. Bank (55 NY2d 550 [1982]). In that case a bank claimed that a real estate brokerage commission had not been earned under the literal terms of an agreement. Although the precise conditions stated as to when the commission was earned did not occur, the bank’s goal of disposing of its interest in the property to an identified buyer was achieved. After reviewing rules governing interpretation of contracts the Court said: “These guidelines in mind, examination of the agreement as a whole almost unavoidably impresses one with the idea that its broad concern was to effect a satisfactory liquidation of the bank’s interest in the property rather than with the design of the transaction by which this would be achieved.” (Id. at 555 [emphasis added].)
Paraphrasing, it may be said in the present matter that examination of the agreement as a whole almost unavoidably impresses one with the idea that its broad concern was to effect an equal distribution of the trust’s remainder assets to the four sons rather than with the design of the transaction by which this would be achieved.
None of Edythe Chiaro’s four sons are precluded from renouncing a remainder interest in the trust (see EPTL 2-1.11 [h]), and none of them is compelled to retain all that is initially received as a remainderman. While the present situation does not involve a full renunciation of an interest in the trust remainder, nothing should preclude any of the sons from binding themselves contractually to turn over a share of the trust remainder received that is in excess of 25% to any of the other brothers to achieve the goal of equal distribution of such remainder. The stipulation should be so construed.
It is axiomatic that when construing a stipulation “a court should not, under the guise of contract interpretation, ‘imply a *702 term which the parties themselves failed to insert’ or otherwise rewrite the contract” (Aivaliotis v Continental Broker-Dealer Corp., 30 AD3d 446, 447 [2d Dept 2006]; accord e.g. Charter Realty & Dev. Corp. v New Roc Assoc., 293 AD2d 438 [2d Dept 2002]). Here, the court is not rewriting the stipulation but, rather, it is giving effect to the material terms (see Kamens v Utica Mut. Ins. Co., 6 AD3d 1237, 1243 [4th Dept 2004] [“We emphasize that we are not enforcing any unilateral modification of the agreement by Charles; rather, we are effectuating the bilateral divorce stipulation”]).
It should be further noted that the court is not presuming to give effect to principles of equity to reform the agreement. Simply stated, the court is not reforming an agreement. There is no need to do so inasmuch as this is not a case in which there is proof of mutual mistake or inadvertence, or the excusable mistake of one party and fraud of the other sufficient to warrant reformation (see Ross v Food Specialties, 6 NY2d 336 [1959]; Metzger v Aetna Ins. Co., 227 NY 411 [1920]; Nicholas J. Masterpol, Inc. v Travelers Ins. Cos., 273 AD2d 817 [4th Dept 2000]; Surlak v Surlak, 95 AD2d 371 [2d Dept 1983]). Moreover, there is no application for that relief (see Banker v Banker, 56 AD3d 1105 [3d Dept 2008]; Lambert v Lambert, 142 AD2d 557 [2d Dept 1988]). In any event, all that is required here is to give effect to the essential purpose and material terms of the parties’ stipulation.[9]
Further, to assure the availability of trust assets so as to make the stipulation meaningful, each of the brothers is directed by the amendment to the judgment and order added by this order, not to pledge, encumber, sell, mortgage, hypothecate or assign any remainder interest in the subject trust.[10]
That branch of the movant’s application which seeks an order cancelling and declaring the May 16, 2007 and May 24, 2007 *703 amendments to the subject trust null and void is denied. The movant has not proved that Ralph J. Chiaro was without authority to act as the sole, nonincapacitated grantor on those dates. Moreover, his resignation as trustee on May 16, 2007 did not affect his right to amend the trust in his capacity as grantor. As noted, the record includes two letters apparently from licensed mental health professionals indicating that Edythe Chiaro was unable to handle or make informed decisions regarding management of her financial affairs. Assuming the validity of these letters, which have not been shown to be in any fashion fraudulent, pursuant to articles V (A) and VII (I) of the trust, Ralph Chiaro had the power unilaterally to amend the trust on May 16, 2007 and May 24, 2007.
Nor does the court find that article V (B) is an exception to Ralph Chiaro’s power to make amendments to the trust. As noted above, article V (A) of the trust regarding the “right of revocation and amendment” includes the specific directive that “This trust may not be amended during the lifetime of both Grantors without the written agreement of both Grantors, unless one of the Grantors is incapacitated or incompetent, in which case the other Grantor shall have the right to modify this trust.” article V (B), which concerns the right to change trustees, employs different language. It provides: “The Grantors, during their joint lifetime, and thereafter the surviving Grantor, shall have the right, from time to time, to change the Trustees of the trust subject to this instrument to any other Trustees.” Unlike article V (A) there is no reference in article V (B) to the right of one of the grantors to act alone if the other is incapacitated.
However, as noted above, article VII (I) states: “All rights granted to any person by any provision of this trust, may be exercised by such person at any time during his or her lifetime and capacity, unless otherwise specifically provided herein.” The movant contends that the difference in language in article V (A) and (B) compels the conclusion that Ralph Chiaro had no power unilaterally to change the trustee, even after Edythe Chiaro became incapacitated. The court cannot agree. While it can be argued that the distinction in the language of article V (A), which specifically refers to incapacity, and article V (B), which refers only to the grantors’ “joint lifetime” suggests that a different meaning was intended, construing article V (B) with the gloss of article VII (I) requires that the word “lifetime” in article V (B) means during the person’s “lifetime *704 and capacity.” Further, to construe the power to change trustees limited to the literal period of the joint lifetimes of Ralph Chiaro and Edythe Chiaro places an irreconcilable restriction on the broad power to revoke the trust “in whole or in part” as provided in article V (A) (see generally Matter of Woodward, 284 App Div 459 [4th Dept 1954]; but see Matter of Walton, 56 AD2d 436 [1st Dept 1977], lv denied 42 NY2d 808 [1977]).
With respect to David Chiaro’s cross motion for an order vacating that portion of the August 18, 2008 stipulation of settlement, which provided for amendment of the dispositive provisions of the Chiaro Family Revocable Trust, it is granted to the extent that insofar as the stipulation provides that “the Chiaro family revocable trust shall be amended to include all four brothers as equal twenty five percent beneficiaries,” the stipulation shall be construed to reflect that irrespective of the terms of the trust the remainder of trust assets will be divided equally among, Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro, 25% each, without the need for amendment of the trust.
Similarly, the branch of this cross motion by David Chiaro for an order vacating so much of the court’s October 31, 2008 judgment and order providing for amendment of the dispositive provisions of the Chiaro Family Revocable Trust is granted to the extent that the judgment and order is modified, to reflect the construction placed on the parties’ stipulation, by deleting the directive
“that the Co-Property Management Guardians shall have the power to execute and shall execute an amendment to the Chiaro Family Revocable Trust, to the extent that it involves transfers of EDYTHE CHIARO’s property to or for the benefit of another person pursuant to Section 81.21 (e) of the Mental Hygiene Law and naming all four sons as equal beneficiaries of the Chiaro Family Revocable Trust on or before December 1, 2008,”
and a provision is substituted therefor directing
“that irrespective of the terms of the Chiaro Revocable Family Trust the remainder assets of the Trust shall be divided equally among Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro, 25% each, and that Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro shall not pledge, encumber, sell, mortgage, hypothecate or assign any *705 remainder interest in the subject Trust.”
This modification of the judgment and order has been made to give meaningful effect to the parties’ agreement as construed by the court. It is not based on the arguments of David Chiaro, which the court finds unpersuasive, that his lawyer asserted undue pressure and forced him to enter into the stipulation which, he claims, is not consistent with Edythe Chiaro’s estate plan (see DeGregorio v Bender, 4 AD3d 385, 386 [2d Dept 2004] [“Any alleged negligence by the plaintiffs former attorneys would not provide a reason to set aside the stipulation where the plaintiff was present during the negotiations, the stipulation was read in open Court, and the plaintiff did not object to the settlement”]; Cavalli v Cavalli, 226 AD2d 666, 667 [2d Dept 1996] [“In order to prove legal duress, a party must adduce evidence that a wrongful threat precluded the exercise of the party’s free will”]; accord e.g. Adalian v Stuyvesant Plaza, 288 AD2d 789 [3d Dept 2001]).
Moreover, David Chiaro’s contention that the mandate that he amend the trust as the guardian for Edythe Chiaro must be vacated on jurisdictional grounds, specifically that he could not be compelled to amend the trust without first providing notice to Edythe Chiaro’s grandchildren who are all potentially affected beneficiaries (see e.g. Matter of Dodge, 25 NY2d 273 [1969]; Matter of Mergenhagen, 50 AD3d 1486 [4th Dept 2008]; Matter of Roth v Lipton, 73 AD2d 560 [1st Dept 1979]), is without merit. The mechanism for achieving the amendment to the trust contemplated by the October 31, 2008 judgment and order was not one requiring consents of all parties as is required under EPTL 7-1.9. Rather, the trust was to be amended by the property management guardian on behalf of Edythe Chiaro acting under the same authority she would have had to amend the trust as a grantor (with the underlying assumption that Edythe Chiaro had that authority). The act of amending the trust in that fashion would not have required notice to additional parties (see generally Matter of Elsie B., supra).
Nor does the court agree that a guardian, in general, cannot be empowered to amend a trust when the trust serves as a testamentary substitute (see Mental Hygiene Law § 81.21 [a] [“Transfers made pursuant to this article may be in any form that the incapacitated person could have employed if he or she had the requisite capacity, except in the form of a will or codicil”]).
With the explanation provided by this decision, and in view of the questions put in issue by the current motion and cross mo *706 tion, it is concluded that the court has the power to amend the judgment and order as directed herein (cf. Trump v Trump, 179 AD2d 201 [1st Dept 1992]).
In view of the foregoing, it is ordered that the branch of this motion by Dennis Chiaro for an order punishing David Chiaro and William Chiaro for civil contempt is denied, and it is further ordered that the branch of this motion by Dennis Chiaro for an order directing David Chiaro and William Chiaro, in their individual capacity, to pay all expenses and legal fees incurred in this motion is denied, and it is further ordered that the branch of the motion by Dennis Chiaro to compel David Chiaro and William Chiaro to account as cotrustees of the Chiaro Family Revocable Trust is granted only to the extent that the parties shall be entitled to serve and file further papers in connection with the accounting as directed by the court on the record on March 8, 2010, and it is further ordered that the branch of this motion by Dennis Chiaro for an order compelling David Chiaro to amend the Chiaro Family Revocable Trust to include Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro as equal remainder beneficiaries is denied, and it is further ordered that the branch of this motion by Dennis Chiaro for an order cancelling and declaring the May 16, 2007 and May 24, 2007 amendments to the subject trust null and void is denied, and such amendments are hereby declared valid, and it is further ordered that the branch of this cross motion by David Chiaro for an order vacating that portion of the August 18, 2008 stipulation of settlement, which provided for amendment of the dispositive provisions of the Chiaro Family Revocable Trust, is granted to the extent that insofar as the stipulation provides that “the Chiaro family revocable trust shall be amended to include all four brothers as equal twenty five percent beneficiaries,” the stipulation shall be construed to reflect that irrespective of the terms of the trust, the remainder of trust assets will be divided equally among Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro, 25% each, without the need for amendment of the trust, and it is further ordered that the branch of this cross motion by David Chiaro for an order vacating so much of the court’s October 31, 2008 judgment and order as provided for amendment of the dispositive provisions of the Chiaro Family Revocable Trust, is granted to the extent that the judgment and order is modified by deleting the directive:
“that the Co-Property Management Guardians shall *707 have the power to execute and shall execute an amendment to the Chiaro Family Revocable Trust, to the extent that it involves transfers of EDYTHE CHIARO’s property to or for the benefit of another person pursuant to Section 81.21 (e) of the Mental Hygiene Law and naming all four sons as equal beneficiaries of the Chiaro Family Revocable Trust on or before December 1, 2008,”
and substituting therefor a provision directing:
“that irrespective of the terms of the Chiaro Revocable Family Trust, the remainder assets of the Trust shall be divided equally among Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro, 25% each, and that Douglas Chiaro, Dennis Chiaro, David Chiaro and William Chiaro shall not pledge, encumber, sell, mortgage, hypothecate or assign any remainder interest in the subject Trust.”

. The branch of the motion to punish William Chiaro for contempt is academic inasmuch as William Chiaro has been relieved of his appointment as co-guardian of the property management of Edythe Chiaro pursuant to an order dated January 6, 2009. David Chiaro, therefore, as the sole property management guardian, is the only individual with the authority to comply with the directive in the October 31, 2008 judgment and order to execute a purported amendment of the trust in issue. Any other requests for relief against William Chiaro in his capacity as property management coguardian are similarly academic.

. The contempt application was based upon alleged failure to execute an amendment to the trust as mandated by the court. Although the written application to punish David Chiaro and William Chiaro for contempt was not predicated on their failure to provide an accounting, at the March 8, 2010 hearing counsel and the court addressed the issue as if the failure to account was a basis for the contempt motion. An accounting was provided before the March 8, 2010 hearing commenced. Although the belated delivery of the accounting would not, as a matter of law, necessarily render an application to punish David Chiaro academic for failure to have accounted in a timely manner, had that in fact been requested relief (see infra Ferraro v Ferraro, 272 AD2d 510 [2d Dept 2000]), counsel for the movant appears to have acquiesced in the court’s supposition on the record on March 8, 2010 that any contempt for failure to have filed a timely account was purged by the delivery of the accounting and that “[t]he only thing he has to defend is whether he is in *692 contempt of Court for failing to file the amendment to the trust” (Mar. 8, 2010 minutes, at 52-54).
The adequacy of the accounting has not been determined. The movant has the opportunity to seek further documents, and ultimately, to file objections to the accounting.

3. This was a change from the September 5, 2008 deadline that had been included in the stipulation spread on the record.

4. It appears that the word “consistent,” rather than “inconsistent,” was incorporated into the order and judgment stemming from an apparent transcription error in the minutes of the August 18, 2008 proceedings. In full context, it is clear that Justice Sgroi meant to indicate that the act or acts in issue were not inconsistent with any prior intention manifested by Edythe Chiaro (see Mental Hygiene Law § 81.21 [e] [3]).

. By his references to Judiciary Law §§ -753 and 756, the movant has limited his application to punish David Chiaro for civil contempt only, and not criminal contempt. To a large degree, what distinguishes civil contempt and criminal contempt is the appropriate penalty. As explained by the Court of Appeals in Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y. (70 NY2d 233, 239 [1987]):
“A civil contempt is one where the rights of an individual have been harmed by the contemnor’s failure to obey a court order. Any penalty imposed is designed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court’s mandate or both. A criminal contempt, on the other hand, involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates. Unlike civil contempt, the aim in a criminal contempt proceeding is solely to punish the contemnor for disobeying a court order, the penalty imposed being punitive rather than compensatory.” (Citations omitted.)
In McCain v Dinkins (84 NY2d 216, 226 [1994]) the Court of Appeals observed:
“Although the line between the civil and criminal contempt may be difficult to draw in a given case and the same act may be punishable as both a civil and a criminal contempt, the element which escalates a contempt to criminal status is the level of willfulness associated with the conduct.”
Moreover, in order to prevail on a motion to punish for criminal contempt the movant must establish, beyond a reasonable doubt, the willful disobedience, while civil contempt must be established by clear and convincing evidence (see e.g. Town of Riverhead v T.S. Haulers, Inc., 68 AD3d 1103 [2d Dept 2009]). Moreover, a party must be served personally with the application before he or she may be punished for criminal contempt (see Clinton Corner H.D.F.C. v Lavergne, 279 AD2d 339 [1st Dept 2001]).

. Moreover, her ineligibility to serve as the trustee and loss of power to amend the trust as a grantor may have been established even earlier upon the issuance of letters by two of her treating physicians, as mentioned supra, stating that she was unable to make informed decisions regarding management of financial affairs.

. The trust provides for a “Trust ‘A’ ” (Surviving Spouse Trust) and a “Trust ‘B’ ” (Exemption Equivalent Shelter Trust/Disclaimer Trust) following the death of one of the grantors. It appears that “Trust ‘B’ ” comes into effect if the surviving grantor exercises a right to disclaim any interest in all or any portion of property passing to him or her (ARTICLE III [F]). The court has not been presented with any evidence showing that Edythe Chiaro has disclaimed any interest in property. Thus, only the provisions concerning “Trust ‘A’ ” are relevant here.

. The principle applied in Matter of Elsie B. (265 AD2d 146 [2000]) is apparently consistent with the rule in Restatement (Third) of Trusts § 63 (“unless the trust terms provide otherwise, the settlor’s power to revoke or amend a revocable trust may be exercised by a conservator, guardian, or other legal representative if and to the extent authorized by the appropriate court”) (see also Bogert, Trusts and Trustees § 1001).

. Nor, as events now stand, is there any basis for imposing a constructive trust to assure that all four brothers share equally in the trust remainder. “ ‘The necessary elements for the imposition of a constructive trust are: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance on that promise; and (4) unjust enrichment’ ” (Watson v Pascal, 65 AD3d 1333, 1334 [2d Dept 2009] [citations omitted]): In the current circumstances there has been no transfer of assets in reliance upon a promise.

. Although (assuming the validity of the May 24, 2007 amendment to the trust) this relief does not give the movant or Douglas Chiaro a direct interest in the trust remainder, it may have as an additional benefit the rendering of the “No-Contest Clause” of the trust (ARTICLE VII [C]) inapplicable as a possible obstacle to their right to share in the trust remainder.